Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1845 Woodall Rodgers Fwy, Ste. 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HALLMARK FINANCIAL SERVICES, INC.,[1] | § § § | Case No. 26-80007 (MVL) |
| Debtor. | § § § | |

## DEBTOR'S MOTION FOR AN ORDER
## AUTHORIZING PAYMENT OF CERTAIN PROFESSIONAL FEES AND
## EXPENSES OF HILDENE CAPITAL MANAGEMENT, LLC AND AFFILIATES

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The last four digits of the Debtor's federal tax identification number are 7375. The Debtor's mailing address is 5400 Lyndon B Johnson Fwy, Ste 400, Dallas, Texas 75240.

4924-6760-6702

Hallmark Financial Services, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), respectfully states the following in support of this motion (the "Motion"):[2]

**Preliminary Statement**

1. The Debtor files this Motion seeking authority to pay the reasonable, budgeted and documented professional fees and expenses (the "Hildene Professional Fees") incurred by Hildene Capital Management, LLC and its affiliates (collectively, "Hildene") in connection with the negotiation, documentation, and implementation of that certain April 3, 2026 Restructuring Support and Forbearance Agreement (the "RSA"), the prepackaged chapter 11 plan (the "Plan"), and all matters related thereto.

2. Hildene represents the Debtor's largest group of creditors, holding the majority of the Debtor's prepetition funded debt—*i.e.,* approximately 72% of the outstanding Senior Unsecured Notes, approximately 66.7% of the 2035 Junior Subordinated Debt Securities, and approximately 50.1% of the 2037 Junior Subordinated Debt Securities. Hildene has been instrumental to the Debtor's restructuring efforts by, among other things, entering into the RSA, forbearing from exercising remedies, coordinating with the Debtor to obtain regulatory approvals of the Restructuring Transaction contemplated under the Plan and RSA, authorizing the Debtor to pursue potential alternatives to market test the Restructuring Transaction, and supporting the Plan and this chapter 11 case. Without Hildene's active engagement and the substantial contributions to this chapter 11 case through its professionals, the Debtor's path toward emergence from this chapter 11 case would be less certain and more costly, resulting in substantially more risk to creditors, employees, and other key stakeholders.

---

[2] Capitalized terms not immediately defined herein have the meaning as defined later on in this Motion.

4924-6760-6702

3.      The Debtor's agreement to pay the Hildene Professional Fees was expressly negotiated as a material term of the RSA and has been incorporated into the Plan.  The Plan requires payment of all reasonable, budgeted, and documented fees and expenses of the Hildene Advisors and makes full payment of the Hildene Professional Fees a condition precedent to the Plan Effective Date.  Because the Plan contemplates that General Unsecured Creditors will be paid in full or receive consideration equal to 100% of their allowed claims, payment of the Hildene Professional Fees before confirmation of the Plan does not prejudice parties in interest and merely accelerates the timing of a payment the estate is already obligated to make.  In addition, Hildene has, at a minimum, colorable arguments for allowance of administrative expense claims under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, based on its substantial contributions to the success of this chapter 11 case.

4.      The Debtor therefore believes, in the exercise of its sound business judgment, that paying the Hildene Professional Fees as set forth in this Motion will promote Hildene's continued support for the restructuring, avoid potential disputes, delay, and administrative expense, and provide a concrete benefit to the estate and its creditors.

**Relief Requested**

5.      By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) authorizing the Debtor to pay certain professional fees and expenses of Hildene Capital Management, LLC; and (b) granting related relief.

**Jurisdiction and Venue**

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

4924-6760-6702

8. The bases for the relief requested herein are sections 363(b) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

9. Founded in 1987 and headquartered in Dallas, Texas, Hallmark is a diversified property and casualty insurance holding company. Through its non-debtor operating subsidiaries, Hallmark offers commercial and personal insurance solutions to businesses and individuals in specialty and niche markets on an admitted basis. The business lines include underwriting and servicing property and casualty insurance products that require specialized underwriting expertise and market knowledge. The company's non-debtor operating subsidiaries are: (a) licensed as admitted carriers in 49 states; (b) licensed as managing general agents ("MGA") in 48 states; (c) eligible as excess and surplus ("E&S") carriers in 45 states; and (d) engaged in active business in 18 states. Until January 1, 2024, the Debtor was a publicly listed corporation with stock trading on Nasdaq.

10. On June 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committee has been appointed.

11. A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, are set forth in the *Declaration of William Snyder, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[3] filed contemporaneously herewith

---

[3] All capitalized terms used but not defined in this Motion shall have the meaning ascribed to them in the First Day Declaration, Plan, or RSA, as applicable.

4924-6760-6702

and incorporated herein by reference.  As discussed more fully in the First Day Declaration, the Debtor has entered into the RSA with Hildene and, as such, intends to file its prepackaged chapter 11 Plan contemporaneously with its bankruptcy petition and other first day motions.  This Motion is filed in furtherance of the Plan and RSA.

### A. Events Leading to the Restructuring

12. The Debtor's need for financial restructuring began with a structural tension created by its funded debt agreements.  The Debtor's prepetition funded debt includes:  (i) $50 million in principal indebtedness pursuant to those certain Senior Unsecured Notes issued in 2019 (the "Senior Unsecured Notes") pursuant to that certain Indenture, dated as of August 19, 2019 (the "Senior Unsecured Notes Indenture");  (ii) approximately $30.9 million in principal indebtedness pursuant to those certain junior subordinated debt securities maturing in 2035 (the "2035 Junior Subordinated Debt Securities");  and (iii) approximately $25.8 million in principal indebtedness pursuant to those certain junior subordinated debt securities maturing in 2037 (the "2037 Junior Subordinated Debt Securities" and together with the 2035 Junior Subordinated Debt Securities, the "Junior Subordinated Debt Securities").

13. Two features in the prepetition indentures are at odds with one another.  On the one hand, the Senior Unsecured Notes Indenture contains a covenant restricting the Debtor from paying junior indebtedness if the Debtor's debt-to-capital ratio exceeds 35%.  The Debtor's debt-to-capital ratio currently exceeds 100%.  On the other hand, the Junior Subordinated Debt Securities indentures allowed the Debtor to defer quarterly interest payments for 20 consecutive quarters.  The Debtor began deferring such interest payments in 2020, resulting in such deferred interest payments coming due in late 2025.  While the Debtor had (and still has) the liquidity to make the deferred interest payments on the Junior Subordinated Debt Securities when they came

4924-6760-6702

due in 2025, doing so would have resulted in a breach of the debt-to-capital ratio covenant in the Senior Unsecured Notes Indenture, and an unavoidable default as the result of these conflicting obligations.

### B.     Hildene's Critical Role in the Restructuring

14.     The Debtor first began negotiating with its prepetition creditors in late 2024.  At the time, Hildene controlled the majority of the Junior Subordinated Debt Securities, and a minority of the Senior Unsecured Notes.  While the Debtor sought an agreement from the prior majority holders of the Senior Unsecured Notes, they were unwilling to waive the debt-to-capital ratio or otherwise consent to the Debtor's payment of the deferred interest coming due on the Junior Subordinated Debt Securities.  During the course of those negotiations in 2025, Hildene acquired the majority of the Senior Unsecured Notes.

15.     Following extensive arm's-length negotiations between the Debtor, Hildene, and their respective advisors over several additional months, the parties executed that certain March 27, 2026, Restructuring Term Sheet setting forth the essential terms of the RSA.  On April 3, 2026, the Debtor and Hildene executed the RSA, which incorporates the Restructuring Term Sheet and sets forth the parties' binding commitments to support and consummate the "Restructuring Transaction" or, alternatively, an "Alternative Restructuring Transaction" pursuant to a dual-track toggle structure.

16.     As a key component of the RSA, Hildene agreed to forbear from exercising remedies against the Debtor with respect to any claims held by Hildene arising from defaults or events of default under the Senior Unsecured Notes Indenture, the 2035 Junior Subordinated Debt Securities Indenture, or the 2037 Junior Subordinated Debt Securities Indenture, commencing on

6

4924-6760-6702

the RSA's effective date and continuing until the earlier of the Petition Date or the RSA's termination.

17.     Hildene's engagement in this restructuring has been extensive and has included: (i) the negotiation of the RSA and the Plan over multiple months; (ii) forbearing from exercising remedies against the Debtor during the prepetition period; (iii) providing the Debtor with a viable restructuring path that serves as the "stalking horse" or backstop transaction; (iv) supporting the marketing and solicitation processes; and (v) coordinating with state insurance regulators in Texas, Arizona, and Oklahoma regarding the restructuring.

18.     Without Hildene's participation and the substantial contributions of its professional advisors, this chapter 11 case would not have a clear and consensual path toward emergence, and the Debtor's creditors and stakeholders would face significant uncertainty, increased administrative costs, and potentially diminished recoveries.

**Basis for Relief Requested**

**I.     Payment of the Hildene Professional Fees Is a Sound Exercise of the Debtor's Business Judgment Under Section 363(b)**

19.     The Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Fifth Circuit has held that "[i]mplicit in § 363(b) is the further requirement of justifying the proposed transaction . . . . That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *Comm. of Equity Sec.*

7

*Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also*

*ASARCO, Inc. v. Elliott Mgmt.* (*In re ASARCO, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011)

("The business judgment standard in section 363 is flexible and encourages discretion.").

20.     Here, the Debtor's decision to pay the Hildene Professional Fees is a sound exercise

of its business judgment.  The Debtor's obligation to pay the Hildene Professional Fees was

expressly negotiated as a material term of the RSA and has been incorporated directly into the

Plan.  Article VI.O of the Plan provides that the Debtor shall pay all reasonable, budgeted, and

documented fees and expenses of Fox Rothschild, LLP, Wollmuth Maher & Deutsch LLP,

Maynard Nexsen, P.C., Ryan Specialty Holdings, Inc., Ducera Partners, LLC, and any other

professionals and/or consultants determined necessary by Hildene (collectively, the

"Hildene Advisors"), during the course of the bankruptcy case, and that any accrued Hildene

Professional Fees not billed or paid as of the Effective Date shall be paid on, or as soon as

reasonably practicable following, the Effective Date.

21.     Moreover, Article IX.B(vii) of the Plan makes full payment of all Hildene

Professional Fees an express condition precedent to the occurrence of the Plan Effective Date,

requiring that all billed Hildene Professional Fees have been paid in full and that amounts sufficient

to pay any accrued but not yet billed fees have been placed in a separate professional fee escrow

account post Effective Date.

22.     Because the Debtor is obligated to pay the Hildene Professional Fees under the

RSA, and because the Debtor will become obligated to pay such Hildene Professional Fees under

the proposed Plan, the only question is one of timing.  The Debtor believes, in its business

judgment, that making such payments pursuant to this Motion as they arise postpetition in this

chapter 11 case, rather than deferring them to the Plan Effective Date, will promote Hildene's

8

4924-6760-6702

continued support for the Debtor's restructuring, avoid potential disputes, delays, and administrative expense associated with litigating a potential 503(b)(3)(D) claim. Payment pursuant to this Motion therefore provides a concrete benefit to the estate and its creditors while causing no prejudice to any party in interest.

**II.     Hildene Has Colorable Arguments to Receive Payment Under Section 503(b)(3)(D) for Making a Substantial Contribution to This Case**

23.     Section 503(b)(3)(D) of the Bankruptcy Code provides for the allowance of an administrative expense claim for "the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) further provides for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under" section 503(b)(3)(D).

24.     The Fifth Circuit has held that a determination of "substantial contribution" claim allowance is best left to a case-by-case analysis wherein the bankruptcy judge should make specific and detailed findings on the substantial contribution issue. *Hall Fin. Grp., Inc. v. DP Partners, Ltd. P'ship* (*In re DP Partners Ltd. P'ship*), 106 F.3d 667, 673 (5th Cir. 1997). However, the Fifth Circuit has provided some guidance on interpreting section 503(b)(3)(D) finding that "the phrase 'substantial contribution' . . . means a contribution that is 'considerable in amount, value or worth'" and holding that "at a minimum [a bankruptcy court must] weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions. Benefits flowing to only a portion of the estate or to limited classes of creditors are necessarily diminished in weight." *Id.*

25.     Courts in this district have employed a variety of factors, as enumerated in *In re Mirant*, 354 B.R. 113, 132–35 (Bankr. N.D. Tex. 2006), to further expand on the Fifth

4924-6760-6702

Circuit's ruling in *DP Partners*. *In re R.L. Adkins Corp.*, 505 B.R. 770, 780 (Bankr. N.D. Tex. 2014). The factors generally considered are:

> (1) whether the services involved in the contribution provided a benefit to the estate; (2) whether the services involved in the contribution were undertaken just for the applicant alone or for the benefit of all parties in the case; (3) whether the applicant would have undertaken the same approach absent the expectation of compensation from the bankruptcy estate; (4) whether the benefit conferred through the applicant's contribution exceeds the cost which the applicant seeks to assess against the estate; (5) whether the efforts of the applicant were duplicative of efforts undertaken by statutory fiduciaries; (6) whether the applicant profited from the situation or rather faced substantial loss if it had not undertaken the approach that it did; and (7) whether the applicant had a negative effect on the case, such as making questionable objections to pleadings filed by the debtor or engaging in improper conduct in some other fashion which caused the debtor to incur costs or which delayed resolution of the case.

*In re Energy Partners, Ltd.*, 422 B.R. 68, 80 (Bankr. S.D. Tex. 2009) (citing *Mirant*, 354 B.R. at 132–35).

26. The record here supports, at a minimum, a colorable basis for concluding that Hildene's professionals made a substantial contribution within the meaning of section 503(b)(3)(D). Hildene's efforts were considerable in amount, value, and worth: (i) Hildene negotiated, documented, and committed to the RSA reflecting a compromise that provides the framework for the Debtor's successful restructuring; (ii) Hildene agreed to forbear from exercising remedies and to direct the applicable indenture trustees not to exercise remedies; (iii) Hildene supported the prepackaged Plan before the Petition Date; and (iv) assisted, and continues to assist, with costly regulatory coordination involving the Debtor's insurance-related business. Those efforts confer benefits to the Debtor by preserving the going-concern restructuring path, reducing the risk of value-destructive litigation and enforcement activity, and ensuring insurance regulatory involvement and compliance for a seamless and informative reorganization promoting a consensual process designed to provide value to all creditors.

4924-6760-6702

27.     Application of the factors considered by courts in this district further supports the requested relief.  The Hildene Professional Fees are tied to work that has advanced, and continues to advance, the restructuring as a whole, are not duplicative of the Debtor's fiduciaries' efforts, and help avoid the costs and delays that would have followed had this compromise not been reached with Hildene.  Under these circumstances, the Debtor submits in its business judgment that payment of the Hildene Professional Fees is appropriate and in the best interests of the estate and its creditors.

**III.     The Court Can Exercise Its Equitable Powers Under Section 105(a) to Allow the Debtor to Pay the Hildene Professional Fees**

28.     Independent of section 363(b), section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Fifth Circuit has recognized that this provision "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code." *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986); *Yaquinto v. Ward* (*In re Ward*), 978 F.3d 298 (5th Cir. 2020) (describing section 105(a) as the source of "general equitable powers of bankruptcy courts"). Section 105(a) can support creditor payments when used in conjunction with other Bankruptcy Code provisions that specifically authorize such payments. *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) (approving payment of priority employee wage claims under section 105(a) in conjunction with section 503(a)(3)).

29.     Here, payment of the Hildene Professional Fees is appropriate under section 105(a) in conjunction with sections 363(b) and 503(b)(3)(D).  As discussed previously, Hildene's continued cooperation is essential to the successful confirmation and consummation of the Plan. Maintaining Hildene's support will help preserve the consensual framework embodied in the RSA,

11

reduce the risk of renewed enforcement activity or disputes that could delay confirmation, and avoid unnecessary administrative expense that would otherwise burden the estate. Conversely, undermining Hildene's support at this stage could jeopardize the Debtor's ability to satisfy the Plan's conditions precedent, obtain the cooperation necessary to consummate the restructuring, and deliver the creditor recoveries contemplated by the Plan.

30. Finally, no party in interest is prejudiced by the relief requested. The Plan requires the Debtor to pay the Hildene Professional Fees as a condition precedent for the Plan's consummation. Thus, authorizing payment through this Motion merely accelerates an existing obligation without diminishing recoveries to any creditor. Accordingly, the equitable considerations overwhelmingly favor approval under section 105(a). *See CEI Roofing, Inc.*, 315 B.R at 60 (When no other parties will be harmed by the payment of priority claims prior to confirmation "the Court . . . is not likely to substitute its judgment for that of a 'sophisticated, competently represented, knowledgeable constituency.'") (quoting *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000)).

### Notice

31. The Debtor will provide notice of this Motion to the following parties or their counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtor; (c) the indenture trustees under the Debtor's prepetition loan facilities; (d) counsel to Hildene; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; (g) the state attorneys general for states in which the Debtor conducts business; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no other or further notice is needed.

4924-6760-6702

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 15th day of June 2026.

**GRAY REED**

By:  */s/ Aaron M. Kaufman*
Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Lydia R. Webb
Texas Bar No. 24083758
Emily F. Shanks
Texas Bar No. 24110350
1845 Woodall Rodgers Fwy, Ste. 1300
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:     jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Proposed Counsel to the Debtor
and Debtor in Possession*

**Certificate of Service**

I certify that on June 15, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Aaron M. Kaufman*
Aaron M. Kaufman

13

4924-6760-6702

## Exhibit A

**Proposed Order**

4924-6760-6702

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| HALLMARK FINANCIAL SERVICES, INC.,[1] | § | Case No. 26-80007 (MVL) |
| | § | |
| Debtor. | § | **Re: Docket No. ___** |
| | § | __ |

**ORDER AUTHORIZING PAYMENT OF CERTAIN PROFESSIONAL FEES
AND EXPENSES OF HILDENE CAPITAL MANAGEMENT, LLC AND AFFILIATES**

Upon the *Debtor's Motion for an Order Authorizing Payment of Certain Professional Fees and Expenses of Hildene Capital Management, LLC and Affiliates* (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order") authorizing the Debtor to pay certain professional fees and expenses of Hildene Capital Management, LLC and its affiliates (collectively, "Hildene"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core

---

[1] The last four digits of the Debtor's federal tax identification number are 7375. The Debtor's mailing address is 5400 Lyndon B Johnson Fwy, Ste 400, Dallas, Texas 75240.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4924-6760-6702

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and the record of the hearing on such motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtor is authorized, without further order of this Court, to pay the Hildene Professional Fees pursuant to the terms of the RSA. The Hildene Professional Fees shall include all reasonable, budgeted and documented fees and expenses incurred by Hildene's counsel, financial advisors, consultants, and other retained professionals in connection with this chapter 11 case, the negotiation, documentation, and consummation of the RSA and the Plan, and all related transactions; *provided, however*, that the Debtor shall not be responsible for, and shall have no obligation to pay, any fees incurred by Hildene Advisors to investigate, prepare for, or pursue litigation or other claims against the Debtor, its officers, directors, employees, advisors, or consultants.

3. The Hildene Professional Fees shall not be subject to Court allowance but will be governed by the following process: When the Hildene Advisors submit their documented fees and expenses to the Debtor, they shall simultaneously deliver a copy to counsel for any committee

2

4924-6760-6702

appointed in this chapter 11 case and to the U.S. Trustee. The Hildene Advisors need not comply with U.S. Trustee guidelines for retained estate professionals, may submit fees in summary form, and are not subject to Court application or allowance. Any objections by the Debtor, the Office of the U.S. Trustee, or any committee appointed in this chapter 11 case within ten (10) calendar days of receipt thereof will be resolved by the Court (absent prior consensual resolution). Pending resolution, the Debtor shall promptly pay the undisputed portion of the Hildene Professional Fees. Unless otherwise ordered by the Court, no timely filed objection shall give rise to any setoff, defense, claim, counterclaim, or diminution of any kind.

4. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (f) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

5. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

4924-6760-6702

6.      The Debtor is authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Emily F. Shanks (TX Bar No. 24110350)
**GRAY REED**
1845 Woodall Rodgers Fwy, Ste. 1300
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      jbrookner@grayreed.com
            akaufman@grayreed.com
            lwebb@grayreed.com
            eshanks@grayreed.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

4

4924-6760-6702