CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 25, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HALLMARK FINANCIAL SERVICES, INC.,[1] | § | Case No. 26-80007 (MVL) |
| Debtor. | § | **Re: Docket No. 17** |

# FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE CHAPTER 11 PLAN OF REORGANIZATION FOR HALLMARK FINANCIAL SERVICES, INC.

Upon the *Chapter 11 Plan of Reorganization for Hallmark Financial Services, Inc.* [Docket No. 17] (as it may be amended, modified, or supplemented from time to time, the "Plan")[2] filed on June 15, 2026; and the Plan and all related documents having been distributed or made available to holders of Claims and Equity Interests and other parties in interest as provided in the Solicitation Procedures Order; and upon the supplement to the Plan and related exhibits filed by

[1] The last four digits of the Debtor's federal tax identification number are 7375. The Debtor's mailing address is 5400 Lyndon B Johnson Fwy, Ste 400, Dallas, Texas 75240.

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan, as modified, a true and correct copy of which is attached to this Confirmation Order as **Exhibit A**.

the Debtor on August 6, 2026 [Docket No. 199] (the "Plan Supplement"); and good and sufficient notice of the Plan, the Disclosure Statement, the Plan Supplement, and the Confirmation Hearing having been provided to holders of Claims and Equity Interests in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and the orders and procedures of this Court, as established by the certificates of service filed with the Court (the "Certificates of Service"), and such notice being sufficient under the circumstances and no other or further notice being required; and after full consideration of: (i) the *Declaration of William Snyder in Support of Confirmation of the Chapter 11 Plan of Reorganization for Hallmark Financial Services, Inc.* [Docket No. 228] (the "Snyder Declaration") and further testimony adduced at the Confirmation Hearing and (ii) the *Tabulation of Votes in Connection with the Chapter 11 Plan of Reorganization for Hallmark Financial Services, Inc.* [Docket No. 225] (the "Ballot Tabulation"); and upon [the Debtor's brief in support of confirmation of the Plan [Docket No. 235] (the "Brief" or "Reply")]; and upon [the objection(s) to confirmation of the Plan filed by the Office of the United States Trustee [Docket No. 217] (the "Objection")]; and upon the hearing to consider confirmation of the Plan conducted on August 25, 2026 (the "Confirmation Hearing"); upon the entire record of this Chapter 11 Case, the record made at the Confirmation Hearing and the arguments of counsel and all of the evidence adduced thereat; and the Court having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby **FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A. Findings and Conclusions. The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of

law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

**JURISDICTION AND VENUE**

B. Jurisdiction, Venue, Core Proceeding. This Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* from the United States District Court for the Northern District of Texas, dated August 3, 1984. Consideration of whether the Plan complies with the applicable provisions of the Bankruptcy Code constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O). This Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**CHAPTER 11 CASE**

C. Commencement of the Chapter 11 Case. On June 15, 2026 (the "Petition Date"), Hallmark Financial Services, Inc. (the "Debtor") commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case. No official committee of unsecured creditors has been appointed in this case by the United States Trustee.

D. Judicial Notice. The Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and pleadings reflected therein including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and

arguments made, proffered, or adduced at the hearings held before the Court during the pendency of this Chapter 11 Case.

**MODIFIED PLAN**

E. Approval of modified Plan. The Plan is hereby approved as modified herein and as set forth in the modified Plan attached hereto as **Exhibit A**.

**SOLICITATION AND NOTICE**

F. Solicitation and Notice. The Plan, the Disclosure Statement, Plan Supplement, and the other materials distributed by the Debtor in connection with solicitation of the Plan were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the procedures set forth in the Solicitation Procedures Order. Solicitation of the Plan was conducted both prepetition and postpetition. The prepetition solicitation commenced on May 7, 2026, and the Prepetition Voting Deadline was June 4, 2026. Postpetition notice was provided in accordance with the Solicitation Procedures Order, with the Postpetition Voting Deadline of August 17, 2026. As described in the Snyder Declaration, Ballot Tabulation, and the Certificates of Service: (a) the service of the Solicitation Packages was adequate and sufficient under the circumstances of this Chapter 11 Case; and (b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Procedures Order was timely provided in compliance with the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures Order.

G. Voting. Votes on the Plan were solicited after disclosure to holders of Claims and entitled to vote on the Plan of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Snyder Declaration and the Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the

Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and applicable nonbankruptcy law. Holders of Claims in Classes 3 and 5 were entitled to vote on the Plan. Holders of Claims in Classes 1, 2, and 4 are Unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and applicable nonbankruptcy law. Holders of Claims and Equity Interests in Classes 6 and 7 are Impaired and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

H. Plan Modifications. Modifications to the Plan, as well as other settlements and resolutions announced on the record at the Confirmation Hearing, all of which are set forth in the relevant paragraphs of this Confirmation Order (collectively, the "Plan Modifications"), do not materially or adversely affect or change the treatment of any Claim or Equity Interest and are hereby approved. Such Plan Modifications are deemed to be incorporated into the Plan. In light of the [Voting Tabulation Report], the Court does not grant additional time beyond August 17, 2026 to modify votes on the plan notwithstanding section 1127(d) of the Bankruptcy Code.

I. Objections Overruled. All objections to the Plan, to the extent not withdrawn, waived, or settled prior to or at the Confirmation Hearing, and all reservations of rights contained therein, are overruled on the merits for the reasons stated on the record at the Confirmation Hearing.

**TRANSMITTAL AND MAILING OF MATERIALS; NOTICE**

J. Transmittal and Mailing of Materials; Notice. Due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Confirmation Hearing, and the deadline for filing objections to the Plan and the Disclosure Statement was given to all known holders of Claims and Equity Interests and other parties in interest in compliance with the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and all applicable non-bankruptcy rules and regulations,

and no other or further notice is necessary or required. Publication Notice was published in the Wall Street Journal National Edition and the Dallas Morning News. Stretto, Inc., in its capacity as the solicitation agent (the "Solicitation Agent"), facilitated distribution of the Solicitation Packages in accordance with the Solicitation Procedures Order.

K. Marketing of Debtor's Assets. Raymond James,[3] the Debtor's investment banker, marketed the Debtor's assets in accordance with the Restructuring Support Agreement dated April 3, 2026 (the "RSA") between the Debtor and Hildene and the Bidding Procedures Order.[4] Raymond James adequately marketed the Debtor's assets for sale to the market both pre and post-petition. In total, Raymond James has contacted over 180 potential counterparties on an aggregate, non-duplicative basis across two separate marketing processes in a thorough and robust marketing effort. Notwithstanding Raymond James' efforts, no Qualified Bid for the Debtor's assets was received by the Bid Deadline (as such terms are described in the Bidding Procedures). Accordingly, no Alternative Restructuring Transaction will be possible, the Restructuring Transaction constitutes the highest and best offer for the Debtor, is in the best interests of creditors, and the Debtor will execute the Restructuring Transaction as described in the Plan.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

L. Burden of Proof. The Debtor has met its burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

[3] "Raymond James" refers to Capital Structure Advisory Group at Raymond James & Associates, Inc.

[4] The "Bidding Procedures Order" refers to the *Order (A) Approving Bidding Procedures, (B) Scheduling a Bid Deadline and Auction, (C) Approving Procedures for Curing Prepetition Defaults and Providing Adequate Assurances to Contract Counterparties, and (D) Approving the Forms and Manners of Notice Thereof* [Docket No. 156].

M. Bankruptcy Rule 3016. The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a). The Debtor appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, exculpation, and discharge provisions in the Plan describe, with specific and conspicuous language (in bold), all acts to be enjoined, released, exculpated, and discharged and identify the entities that will be subject to the injunction, releases, exculpation, and discharge, thereby satisfying Bankruptcy Rule 3016(c).

N. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which are addressed by Article II of the Plan and need not be classified, Article III of the Plan designates seven (7) Classes of Claims against, and Equity Interests in, the Debtor. As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Claims and Equity Interests into the different Classes created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Equity Interests.

(ii) Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Claims in Classes 1, 2, and 4 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii) Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article IV of the Plan specifies the treatment of each Impaired Class under the Plan (i.e., Classes 3, 5, 6, and 7), thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv) Same Treatment for Similarly Situated Claims and Interests (11 U.S.C. § 1123(a)(4)). The Plan provides the same treatment for each Claim or Equity Interest in a particular Class unless the holder of a particular Claim or Equity Interest has agreed to less favorable treatment, thereby satisfying section 1123(a)(4) of the Bankruptcy Code. In this case, Hildene has expressly agreed to accept less

favorable treatment than similarly situated Creditors, pursuant to the terms of the RSA, as incorporated into the Plan.

(v) Adequate Means for Implementation (11 U.S.C. § 1123(a)(5)). Article V of the Plan provides adequate means for the Plan's implementation, including, among other things, (a) the Restructuring Transaction, (b) the issuance of New Common Equity, New Convertible Preferred Equity, and New Senior Unsecured Notes, (c) the creation of Hildene Hallmark Holdings, LLC ("HHH"), (d) the appointment of a New Board, (e) the adoption of a Management Incentive Plan, (f) vesting of all property of the Estate in the Reorganized Debtor, (g) the cancellation of existing notes, instruments, and Equity Interests, and (h) the execution and delivery of all agreements, documents, and instruments necessary to implement the foregoing. The Plan thereby satisfies section 1123(a)(5) of the Bankruptcy Code.

(vi) Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The New Organizational Documents of the Reorganized Debtor shall include a provision prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii) Directors and Officers (11 U.S.C. § 1123(a)(7)). The provisions of the Plan regarding the selection of the New Board and officers of the Reorganized Debtor are consistent with the interests of creditors and equity security holders and with public policy. The Plan provides that the New Board shall consist of (a) one (1) Debtor designee (initially, Chris Kenney), (b) three (3) Hildene directors, and (c) one (1) independent director selected by Hildene; the identity of all directors and their compensation has been disclosed in the Plan Supplement. The Plan thereby satisfies section 1123(a)(7) of the Bankruptcy Code.

O. Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(i) Impairment of Claims and Interests (11 U.S.C. § 1123(b)(1)). Consistent with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests.

(ii) Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Consistent with section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan provides for the assumption or rejection of the Debtor's Executory Contracts and Unexpired Leases. The Debtor has exercised sound business judgment in determining which Executory Contracts and Unexpired Leases to assume and which to reject, and the assumption and rejection of such contracts and leases is in the best interests of the Debtor, its Estate, and all parties in interest.

(iii) Compromise and Settlement (11 U.S.C. § 1123(b)(3)). Consistent with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan, including Article X of the Plan, constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved pursuant to the Plan. The compromises and settlements reflected in the Plan, including the RSA, are fair, equitable, and reasonable, and are in the best interests of the Debtor, its Estate, holders of Claims and Equity Interests, and all other parties in interest. The Court finds that such compromises and settlements satisfy the standards set forth in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), and applicable Fifth Circuit precedent.

(iv) Exculpation (Article X.B of the Plan). The exculpation provisions set forth in Article X.B of the Plan are appropriate and consistent with applicable law. The Exculpated Parties (the Debtor, and the members of the Committee in their capacity as such) have acted in good faith and in compliance with applicable law with regard to the solicitation and distribution of consideration pursuant to the Plan and in connection with their administration of the Chapter 11 Case. The exculpation clause is appropriately tailored and contains appropriate carve-outs for fraud, gross negligence, and willful misconduct as determined by a Final Order of a court of competent jurisdiction.

(v) Releases by the Debtor and Hildene (Article X.C of the Plan). The releases by the Debtor and Hildene set forth in Article X.C of the Plan and as modified herein (the "Plan Releases") are appropriate, fair, and reasonable. The Plan Releases are given in exchange for the good and valuable consideration provided by the Company Released Parties and Hildene Released Parties under the Plan, including contributions to the reorganization. The Plan Releases are an integral element of the Plan, having been negotiated in good faith and at arm's length as part of the overall restructuring. The Plan Releases expressly exclude from their scope Naveen Anand, Kenneth Krissinger, Jeffrey Passmore, and Charles Stauber, and do not release Claims or Causes of Action by or against such individuals.

(vi) Third-Party Releases (Article X.D of the Plan). The third-party releases by Releasing Parties set forth in Article X.D of the Plan and as modified herein (the "Third-Party Releases") are appropriate under the circumstances, integral to the Plan, and consistent with applicable law. The Third-Party Releases are voluntary and consensual: holders of Claims in voting Classes (Classes 3 and 5) had the opportunity to opt out of the Third-Party Releases on their Ballots, and holders of Claims and Equity Interests in non-voting Classes had the opportunity to opt in by returning Opt-In Forms. Holders who did not opt out (or who affirmatively opted in) are "Consenting Parties" and are bound by the Third-Party Releases. None of the Anand Parties nor the Krissinger Parties shall be deemed a Consenting Party, and none of the Anand Parties nor the Krissinger Parties shall be deemed to grant the Third-Party Releases. The Third-Party Releases are narrowly

tailored, apply only to Released Parties, and expressly exclude Naveen Anand, Kenneth Krissinger, Jeffrey Passmore, and Charles Stauber from the scope of any release. The Third-Party Releases are (a) integral to the settlement and essential to the formulation and implementation of the Plan, (b) confer substantial benefits on the Debtor's Estate, (c) are fair, equitable, and reasonable, and (d) are in the best interests of the Debtor, its Estate, and parties in interest.

(vii) Injunction (Article X.E of the Plan). The injunction provisions set forth in Article X.E of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, the release provisions, the exculpation provisions, and the gate keeping provisions of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

(viii) Gate Keeping (Article X.F of the Plan). The gate keeping provision set forth in Article X.F of the Plan is appropriate and consistent with applicable law. This provision requires that no Person assert any Cause of Action or claim for which the Exculpated Parties are exculpated under the Plan unless a court of competent jurisdiction first determines, after a hearing upon written notice to the Exculpated Parties, that such claim is colorable as a claim not subject to exculpation.

(ix) Retained Causes of Action (Article VI.M of the Plan). Article VI.M of the Plan appropriately provides for the preservation of Causes of Action in the Reorganized Debtor. Retained Causes of Action have been identified with the requisite degree of specificity in the Plan Supplement. As of the Effective Date, except as otherwise specifically provided in the Plan, the Reorganized Debtor shall retain and may enforce all Causes of Action. The Reorganized Debtor's retention of Causes of Action does not constitute a waiver or release of any claims, rights, or Causes of Action that the Debtor, the Estate, or the Reorganized Debtor may hold against any Person, including claims against Naveen Anand, Kenneth Krissinger, Jeffrey Passmore, and Charles Stauber.

(x) Discharge (Article X.A.2 of the Plan). Article X.A.2 of the Plan provides for the discharge of the Debtor and the Reorganized Debtor in accordance with section 1141(d) of the Bankruptcy Code. The discharge provisions are appropriate and consistent with applicable law.

P. Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan was negotiated at arm's length among the Debtor, Hildene, and other key stakeholders, and is the product of extensive, good-faith negotiations that resulted in the RSA.

The Plan was proposed with the legitimate purpose of reorganizing the Debtor's business and maximizing recovery for holders of Claims and Equity Interests.

Q. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor, the Reorganized Debtor, or by a Person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has disclosed in the Plan and Plan Supplement the identity and affiliations of the individuals proposed to serve as the initial members of the New Board following the Effective Date, and the appointment of such directors is consistent with the interests of creditors and equity security holders and with public policy. The Plan provides that the New Board shall consist of one (1) Debtor designee (Chris Kenney), three (3) Hildene directors, and one (1) independent director selected by Hildene. The identity of any insiders that will be employed or retained by the Reorganized Debtor and the nature of any compensation for such insiders have been disclosed in the Plan Supplement. The Plan thereby satisfies section 1129(a)(5) of the Bankruptcy Code.

S. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate change over which a governmental regulatory commission will have jurisdiction after confirmation. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

T. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). With respect to each Impaired Class of Claims and Equity Interests under the Plan, each holder of a Claim or Equity Interest of

such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. As set forth in the liquidation analysis contained in the Disclosure Statement and the Snyder Declaration, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

U. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1, 2, and 4 are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 3 and 5 are Impaired and were entitled to vote on the Plan. As set forth in the Snyder Declaration and the Ballot Tabulation, Classes 3 and 5 voted to accept the Plan by the requisite majorities in number and amount required by section 1126(c) of the Bankruptcy Code. Classes 6 and 7 are Impaired and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtor requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to Classes 6 and 7.

V. Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). Article II of the Plan provides for the treatment of Administrative Claims and Priority Tax Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code, and thereby satisfies section 1129(a)(9).

W. Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). As described above and in the Snyder Declaration and Ballot Tabulation, Classes 3 and 5 were Impaired and voted to accept the Plan in the requisite number and amount. Section 1129(a)(10) is, therefore, satisfied.

X. Feasibility (11 U.S.C. § 1129(a)(11)). The Plan is feasible as required by section 1129(a)(11) of the Bankruptcy Code. Confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Reorganized Debtor. As demonstrated by the Snyder Declaration and other evidence adduced at the Confirmation Hearing, the Reorganized Debtor will have sufficient assets, resources, and cash flow to meet its obligations under the Plan and to operate its business. The Restructuring Transaction provides the Reorganized Debtor with an appropriate capital structure going forward. The Plan thereby satisfies section 1129(a)(11) of the Bankruptcy Code.

Y. Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Court, have been or will be paid by the Debtor on or before the Effective Date pursuant to the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). As provided in Article VIII.J of the Plan, on and after the Effective Date, the Reorganized Debtor shall continue to honor all obligations under employee and retiree benefit programs and related policies and applicable law, including the Retirement Plan for Employees of the Millers Insurance Group (the "Pension Plan"). After the Effective Date, the Reorganized Debtor shall (i) continue to administer the Pension Plan in accordance with the plan document, the applicable provisions of ERISA, and the Internal Revenue Code, and (ii) be vested with all rights and remedies under the foregoing. No provision of the Plan, this Confirmation Order, or section 1141 of the Bankruptcy Code shall be construed to discharge, release, or relieve the Reorganized Debtor, or its successor, from liabilities or requirements imposed under any law or regulatory provision arising after the Effective Date with respect to the Pension Plan or PBGC. Accordingly, section 1129(a)(13) of the

Bankruptcy Code is satisfied. PBGC and the Reorganized Debtor agree that all proofs of claim filed by PBGC shall be deemed withdrawn with prejudice as of the Effective Date.

AA. Sections 1129(a)(14), (15), (16). The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable. The Debtor is not an individual, and accordingly, section 1129(a)(15) is inapplicable. The Debtor is not a non-profit corporation or trust, and accordingly, section 1129(a)(16) is inapplicable in this Chapter 11 Case.

BB. Confirmation Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b)). Notwithstanding the fact that Classes 6 and 7 have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) at least one Impaired Class of Claims has voted to accept the Plan, determined without including any acceptance by an insider; (b) the Plan does not discriminate unfairly against, and is fair and equitable with respect to, Classes 6 and 7; and (c) with respect to Class 6 (Intercompany Claims) and Class 7 (Equity Interests), no holder of any Claim or Equity Interest that is junior to such Classes will receive or retain any property under the Plan on account of such junior Claim or Equity Interest, and no holder of a Claim or Equity Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. The absolute priority rule is satisfied. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

CC. Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan subject to confirmation in this Chapter 11 Case. Section 1129(c) of the Bankruptcy Code has been satisfied.

DD. Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

EE. Not a Small Business Case (11 U.S.C. § 1129(e)). This Chapter 11 Case is not a small business case, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE**

FF. Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in this Chapter 11 Case, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter 11 Case, the negotiation and pursuit of approval of the RSA, the negotiation and pursuit of approval of the Disclosure Statement, the preparation and solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, the administration of the Plan, and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. The votes of Hildene in favor of the Plan were solicited in good faith pursuant to the RSA.

**PLAN IMPLEMENTATION**

GG. Plan Terms Incorporated. The terms of the Plan are incorporated by reference and are, except as addressed herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

HH. Binding Effect. The Plan and this Confirmation Order have been negotiated in good faith and at arm's-length and, subject to the occurrence of the Effective Date, shall bind any holder of a Claim or Equity Interest and such holder's respective successors and assigns, whether

or not the Claim or Equity Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan. The Plan and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

II. Implementation Documents. All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtor and its creditors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

JJ. Executory Contracts and Unexpired Leases. The Debtor has exercised sound business judgment in determining to assume or reject its Executory Contracts and Unexpired Leases pursuant to Article VIII of the Plan.

**EXCULPATIONS, INJUNCTIONS, RELEASES AND GATE KEEPING**

KK. Exculpation, Injunctions, Releases, and Gate Keeping. The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the exculpation, injunctions, releases, and gate keeping provisions set forth in Article X of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpation set forth in Article X of the Plan if, as has been established here based upon the record in the Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions: (i) were integral to the

settlement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's Estate, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtor, its Estate, and parties in interest. The Debtor and the Krissinger Parties have announced their agreement to the terms of a settlement that will resolve the Debtor's claims and Causes of Action against the Krissinger Parties and the Krissinger Parties' Claims and causes of action against the Debtor, and that the parties will file a motion and proposed Subsequent Settlement Order (as defined below) seeking approval of such settlement in accordance with paragraph 27 of this Confirmation Order.

LL. Third-Party Releases Findings. The Third-Party Releases under the Plan are fair to holders of Claims and Equity Interests and are necessary to the proposed reorganization. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the releases, exculpation, injunctions, and gate keeping provisions provided in Article X of the Plan.

MM. Injunction Findings. The injunction provisions set forth in Article X.E of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, the release provisions of the Plan, including the release, exculpation, and gate keeping provisions of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

## OTHER FINDINGS

NN. Conditions Precedent to Confirmation. The conditions precedent to confirmation of the Plan set forth in Article IX.A of the Plan have been satisfied or waived in accordance with the terms of the Plan.

OO. Retention of Jurisdiction. This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

PP. Objections. All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections.

**THE PLAN SATISFIES CONFIRMATION REQUIREMENTS**

QQ. Confirmation Requirements Satisfied. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Confirmation of the Plan. The Plan, as modified by any Plan Modifications reflected herein, shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Confirmation Order. Any Plan Modifications made to the Plan are approved and do not require additional disclosure or re-solicitation of votes under Bankruptcy Rule 3019.

2. Objections Overruled. All objections to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights contained therein, are hereby overruled on the merits for the reasons stated on the record at the Confirmation Hearing.

3. Binding Effect. Pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order shall bind any holder of a Claim against or Equity Interest in the Debtor and such holder's respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

4. Implementation. The Debtor, the Reorganized Debtor, and any other necessary parties are authorized and directed to take all actions necessary or appropriate to implement, effectuate, and consummate the Plan and this Confirmation Order in accordance with their respective terms, including, without limitation, the execution and delivery of all contracts, instruments, releases, agreements, and other documents contemplated by or described in the Plan or the Plan Supplement.

5. Corporate Action. Upon the entry of this Confirmation Order, all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized, approved, and, to the extent taken prior to or on the Effective Date, ratified without any requirement for further action by the stockholders, members, managers, or directors of the Debtor or the Reorganized Debtor, or by any other Person. All officers and directors of the Debtor are authorized and directed as of the Effective Date to execute, deliver and cause to be filed any documents necessary or appropriate to implementation of the Plan and the Restructuring Transaction under the Plan. As of the Effective Date, all current members of the Board of Directors of the Debtor shall be deemed to have resigned, and the members of the new Board identified in the Plan Supplement shall be deemed to have been appointed by the requisite corporate action.

6. New Organizational Documents. On or immediately before the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall file its New Organizational Documents with the applicable Governmental Unit, Secretary of State, and/or other applicable authorities in its state of incorporation or formation in accordance with the applicable laws of their respective state of incorporation or formation, to the extent required for such New Organizational Documents to

become effective. The New Organizational Documents shall be substantially in the form contained in the Plan Supplement and are hereby approved. The Debtor's or Reorganized Debtor's (as applicable) obligations to indemnify, defend, and reimburse existing and future members of the board existing immediately prior to the Effective Date and the New Board appointed on the Effective Date, as provided under the Debtor's Certificate of Incorporation as in effect immediately prior to the Effective Date, shall survive the Effective Date, and shall be incorporated into the New Organizational Documents directly or by operation of this Confirmation Order, and nothing in the Plan, the New Organizational Documents, or any other Plan Supplements implementing the terms of the Plan or Confirmation Order shall be construed as a basis for disallowing a Claim for indemnity, advancement, exculpation, defense costs, or reimbursement of expenses as described in any such Claim arising from the Debtor's organizational documents in existence prior to the Effective Date, including, but not limited to, with respect to the Anand Claims and the Krissinger Claims.

7. Vesting of Assets in the Reorganized Debtor. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estate, including all Causes of Action and any property acquired by the Debtor under the Plan, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan or this Confirmation Order.

8. Restructuring Transactions. On the Effective Date, the Debtor and/or the Reorganized Debtor, as applicable, is authorized to consummate the Restructuring Transaction in accordance with the terms of the Plan and the RSA. All actions and transactions contemplated by the Restructuring Transaction are hereby authorized and approved.

9. Issuance of New Common Equity, New Convertible Preferred Equity, and New Senior Unsecured Notes. On the Effective Date (or as soon as reasonably practicable thereafter), the Reorganized Debtor and/or HHH are authorized to issue or cause to be issued the New Common Equity, the New Convertible Preferred Equity, and the New Senior Unsecured Notes in accordance with the Plan. For the avoidance of doubt, notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, or the Confirmation Order, neither the Reorganized Debtor nor HHH or any other Person receiving New Common Equity in the Reorganized Debtor shall be entitled to rely upon section 1145 of the Bankruptcy Code as an exemption from the registration requirements of section 5 of the Securities Act of 1933, as amended, *provided*, *however*, that such parties may rely upon any other applicable law exemption from such registration requirements, as applicable. Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, or the Confirmation Order, no provision of the Disclosure Statement, Plan, or the Confirmation Order shall (i) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or entity in any forum.

10. Cancellation of Existing Notes, Instruments, Certificates, and Equity Interests. Except as otherwise provided in the Plan, on the Effective Date, all notes, instruments, certificates, and other documents evidencing Claims or Equity Interests, including the Senior Unsecured Notes, the 2035 Junior Subordinated Debt Securities, the 2037 Junior Subordinated Debt Securities, and all equity interests in the Debtor, shall be cancelled and of no further force and effect, whether surrendered for cancellation or otherwise.

11. Exemption from Certain Taxes and Fees. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

12. Compromise and Settlement. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved pursuant to the Plan. All such compromises and settlements are hereby approved.

13. Releases, Exculpation, Injunction, and Gate Keeping. The release, exculpation, injunction, and gate keeping provisions set forth in Article X of the Plan are hereby approved in their entirety and are incorporated herein as though fully set forth herein. Without limiting the foregoing, the following provisions from Article X of the Plan are hereby approved and shall be effective as of the Effective Date:

> **Exculpation (Article X.B). Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Equity Interest, or any other party in interest, for any claim or cause of action arising on and after the Petition Date from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the occurrence of the Effective Date, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**<u>Plan Releases by the Debtor (Article X.C.1).</u> On the Effective Date, the Company Releasing Parties expressly and generally release, acquit, and discharge the Hildene Released Parties and the Company Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor or its Estate, any claims asserted or assertable on behalf of any Holder of any Claim against or Equity Interest in the Debtor or its Estate and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Company Releasing Parties (whether individually or collectively) ever had, now have, or may have, based on or relating to, or in any manner arising from, in whole or in part, Hildene or the Debtor (including the purchase, sale, rescission, or any other transaction relating to any security of or debt) or the negotiation, formulation, or preparation of the Restructuring Transactions, in each case, whether known or unknown, arising on or before the Effective Date. Notwithstanding the foregoing, nothing in such releases shall be construed as a release, acquittal or discharge of (i) any obligations owed under the Plan, (ii) any claims or causes of action against the Anand Parties, the Krissinger Parties, Jeffrey Passmore, and Charles Stauber, or (iii) any claims or causes of action by any of the Anand Parties or Krissinger Parties against any Person or Entity, including, but not limited to, the Releasing Parties or the Released Parties.**

**<u>Third-Party Releases (Article X.D).</u> On the Plan Effective Date, to the extent permitted by law, all Consenting Parties shall be deemed to release, acquit, and discharge the Hildene Released Parties and the Company Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever (except any Claim against or Equity Interest in the Debtor that is dealt with under this Plan), including any derivative claims asserted or assertable on behalf of the Debtor or its Estate, any claims asserted or assertable on behalf of any Holder of any Claim against or Equity Interest in the Debtor and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Consenting Parties (whether individually or collectively) ever had, now have, or may have, based on or relating to, or in any manner arising from, in whole or in part, Hildene or the Debtor (including the purchase, sale, rescission, or any other transaction relating to any security of or debt) or the negotiation, formulation, or preparation of the Restructuring Transactions, in each case, whether known or unknown, arising on or before the Effective Date. Notwithstanding the foregoing, nothing in such releases shall be construed as a release of any obligations owed under the Plan.**

**In exchange for such Third-Party Releases, the Hildene Released Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Consenting Party to the fullest extent permissible under applicable law, from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions, suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with, the Debtor (or any predecessor entity) or the Chapter 11 Case or affecting property of the Debtor's Estate, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything contained herein to the contrary, the foregoing releases do not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, or (ii) the rights of Holders of Allowed Claims and Equity Interests to receive distributions under the Plan.**

**Each of the Consenting Parties and Hildene Released Party knowingly grants this Third-Party Release notwithstanding that each Consenting Party and Hildene Released Party may hereafter discover facts in addition to, or different from, those which either such Consenting Party or Hildene Released Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and each Consenting Party or Hildene Released Party expressly waives any and all rights that such Consenting Party or Hildene Released Party may have under any statute or common law principle which would limit the effect of the Third-Party Release to those claims actually known or suspected to exist as of the Effective Date.**

**In connection with their agreement to the foregoing Third-Party Release, the Consenting Parties knowingly and voluntarily waive and relinquish any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides:**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

**Injunction and Stay (Article X.E). Upon the Effective Date, and subject to and conditioned upon the Reorganized Debtor's full and timely performance of its obligations under this Plan, or except as otherwise expressly provided in this Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtor, its Estate, or the Reorganized Debtor (as applicable), (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Debtor, its Estate, or the Reorganized Debtor (as applicable) with respect to any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, its Estate, the Reorganized Debtor, or any property or interests in property of any of the foregoing, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, its Estate, the Reorganized Debtor, or any property or interests in property of any of the foregoing, with respect to any such Claim or Equity Interest, or (v) with respect to any Releasing Party, pursuing any claim released or exculpated under the Plan.**

**Each Holder of a Claim or Equity Interest shall be bound by the injunction provisions set forth in this section. The Reorganized Debtor, the Released Parties, or the Exculpated Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or this Plan, including the Exculpation, Injunction and Stay, and Gate Keeping provisions set forth in this Plan.**

**Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect at least until the Effective Date. Notwithstanding the foregoing, after the Effective Date, (i) Naveen Anand shall be permitted to prosecute his Anand Claims against the Debtor or the Reorganized Debtor, as applicable, and defend against claims asserted against him by such party in Anand v. Hallmark Financial Services, Inc., Case No. 24-cv-03181-B (N.D. Tex.) and any related appeals or proceedings, and (ii) Kenneth Krissinger shall be permitted to prosecute his Krissinger Claims against the Debtor**

**or the Reorganized Debtor, as applicable, and defend against claims asserted against him by such party in Hallmark Financial Services, Inc. v. Krissinger, Case No. 26-cv-00040-B (N.D. Tex.) and in any related appeals or proceedings.**

**<u>Gate Keeping (Article X.F).</u> Except as otherwise provided herein, no Person or Entity may commence or pursue a claim or cause of action of any kind against any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or cause of action subject to Article X.B, X.C, X.D, and X.E hereof, including any claim or cause of action that was asserted or assertable on behalf of the Debtor, including any derivative, alter ego, successor liability, or similar claims and Causes of Action based on general harm to the Debtor, Holders of Claims and Equity Interests, or any other party in interest, or a theory of lack of separation between the Debtor and an Exculpated Party, without the Bankruptcy Court first determining, upon motion that attaches a copy of the proposed complaint or petition, and after notice and a hearing, that such claim or cause of action represents a direct (as opposed to derivative) and claim of any kind which has not been discharged, released, or otherwise exculpated under this Plan. At the hearing on such motion, the Bankruptcy Court shall have sole and exclusive jurisdiction to assess whether the proposed complaint or petition satisfies the applicable standard in this Plan. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law. Notwithstanding the foregoing, (i) Naveen Anand shall not be required to seek approval from the Bankruptcy Court under this provision to prosecute his claims against the Debtor or the Reorganized Debtor, as applicable, or defend against claims asserted against him by such party in Anand v. Hallmark Financial Services, Inc., Case No. 24-cv-03181-B (N.D. Tex.) and any related appeals or proceedings; and (ii) Kenneth Krissinger shall not be required to seek approval from the Bankruptcy Court under this provision to prosecute his claims against the Debtor or the Reorganized Debtor, as applicable, or defend against claims asserted against him by such party in Hallmark Financial Services, Inc. v. Krissinger, Case No. 26-cv-00040-B (N.D. Tex.) and any related appeals or proceedings.**

14. <u>Discharge</u>. Pursuant to section 1141(d) of the Bankruptcy Code and Article X.A.2 of the Plan, effective as of the Effective Date, except as otherwise provided in the Plan or this

Confirmation Order, the Debtor shall be discharged from any and all Claims and debts that arose before the Effective Date, any liability on a Claim that is determined under the Plan, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

15. Executory Contracts and Unexpired Leases. As of the Effective Date, and in accordance with Article VIII of the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed by the Reorganized Debtor unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, (b) has previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed on or before the Confirmation Date, or (d) is identified on the Rejected Executory Contract and Unexpired Lease List (if any) filed as part of the Plan Supplement. All Insurance Policies shall be deemed assumed on the Effective Date.

16. Cure of Defaults. Any monetary defaults under each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure amount as established in accordance with the Solicitation Procedures Order and the Plan.

17. Professional Fee Claims. All Professional Fee Claims shall be paid in accordance with Article II.B of the Plan. The Debtor or Reorganized Debtor shall establish a Professional Fee Reserve in an amount sufficient to pay all reasonably estimated unpaid Professional Fee Claims as set forth in the Plan. Professionals shall file their final fee applications within forty-five (45) days after the Effective Date.

18. Payment of Indenture Trustee Fees. The reasonable and documented fees and expenses of the Indenture Trustees (Bank of New York Mellon Trust Company, N.A. and Wilmington Trust) shall be paid by the Debtor or Reorganized Debtor, accrued before and after

the Petition Date without the need for the filing of any fee application, in accordance with Articles II.E and VII.D of the Plan.

19. Except as specifically provided for in the Plan, on the later of (i) five business days after the Effective Date or (ii) five (5) Business Days following the receipt of an invoice containing specificity with respect to the amounts for which payment is sought, the Distribution Agent shall pay in full in Cash any fees and expenses of the Indenture Trustees, without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Case, and without any requirement for further notice or Bankruptcy Court review or approval. All fees and expenses of the Indenture Trustees incurred after the commencement of the Case and prior to the Effective Date shall be subject to the Indenture Trustee Fee and Expense Cap (except as expressly provided in Article VII.D of the Plan). The Indenture Trustees and their advisors shall provide to counsel to the Debtor invoices for unpaid fees and expenses before or as soon as practicable after the Effective Date.

20. Hildene Professional Fees. All Hildene Professional Fees (including fees and expenses of Fox Rothschild LLP, Wollmuth Maher & Deutsch LLP, Maynard Nexsen, P.C., Ryan Specialty Holdings Inc., Ducera Partners LLC, and any other Hildene Advisors) shall be paid in full in Cash when authorized by an order of this Court or the Plan, for any and all professional fees and expenses incurred, without the need for the filing of any fee application or any further approval of the Court, in accordance with Article II.D of the Plan.

21. No Payment of Attorneys' Fees. Except for Professional Fee Claims, Hildene Professional Fees, and Indenture Trustees' reasonable professional fees and expenses (subject to the Indenture Trustee Fee and Expense Cap, except as expressly provided in Article VII.D of the Plan) described more fully in this Plan, no attorneys' fees or other professional fees shall be paid

by the Debtor with respect to any Claim or Equity Interest, unless (i) otherwise specified in a Final Order of the Bankruptcy Court; (ii) as directed by a Final Order of another court of competent jurisdiction over the Anand Claims and the Krissinger Claims; or (iii) pursuant to an agreement between the Holder of such Claim and the Debtor or the Reorganized Debtor, as applicable.

22. Administrative Claims. Requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Effective Date of the Plan (the "Administrative Claim Bar Date"). Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor, as applicable, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

23. Distributions. All distributions under the Plan shall be made in accordance with Article VI of the Plan. The Reorganized Debtor (or a Distribution Agent appointed by the Reorganized Debtor) is authorized to make all distributions required under the Plan.

24. Conditions Precedent to Effective Date. The Effective Date shall occur on the date upon which all conditions precedent to the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan, including, without limitation: (a) the RSA shall be in full force and effect; (b) this Confirmation Order shall have been entered and shall be a Final Order; (c) the aggregate principal amount of the New Senior Unsecured Notes shall not exceed approximately $14,000,000, plus any accrued and unpaid interest as of the Effective Date; (d) all Regulatory Approvals shall have been obtained; (e) all Plan Supplements shall have been finalized; (f) the New Organizational Documents shall have been executed; (g) all

Hildene Professional Fees shall have been paid; (h) the Professional Fee Reserve shall have been established and funded to account for any and all accrued or anticipated fees and expenses as of the Effective Date; (i) all implementation documents shall have been executed; and (j) no law, regulation, or order shall have been enacted, entered, or deemed applicable that restrains, prohibits, or renders illegal the consummation of the Plan.

25. Notice of Effective Date. The Debtor or Reorganized Debtor shall file a notice of the occurrence of the Effective Date with the Court within two (2) business days after the occurrence of the Effective Date.

26. Abatement of Litigation Pending the Effective Date. Unless otherwise ordered by this Court or the District Court for the Northern District of Texas, all proceedings in the actions styled *Anand v. Hallmark Financial Services, Inc.* Case No. 3:24-cv-03181-B, pending in the United States District Court for the Northern District of Texas (the "Anand Action"), and *Hallmark Financial Services, Inc. v. Krissinger*, Case No. 26-cv-00040-B, pending in the United States District Court for the Northern District of Texas (the "Krissinger Action"), shall remain abated for all purposes until the Effective Date (the "Abatement Period"), and the Debtor, the Krissinger Parties, and the Anand Parties shall submit one or more stipulations and/or agreed orders with the District Court consistent with the foregoing (each, an "Abatement Stipulation"), *provided*, *however*, that, during the Abatement Period, and notwithstanding whether an Abatement Stipulation is entered or approved by the District Court, the Debtor, Hildene, Anand Parties, and Krissinger Parties, as applicable, shall work in good faith, which good faith discussions shall include but not be limited to, with all rights reserved, entitlement to advancement for any fees and expenses and a procedure for the submission, review, and payment of advancement for any fees or expenses, to resolve the Anand Claims and Krissinger Claims, as applicable, prior to the

expiration of the Abatement Period, and any Abatement Stipulation providing for such further abatement shall expressly include such good faith obligations; and *provided*, *further*, that, in the event that the parties are able to resolve the Anand Claims, the Krissinger Claims, or both Claims prior to the expiration of the Abatement Period, the applicable parties may file joint stipulations in the Anand Action or the Krissinger Action, as applicable, consistent with any such resolution.

27. Retained Causes of Action. Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date. No Person may rely on the absence of a specific reference to any Cause of Action against them in the Plan, the Plan Supplement, or this Confirmation Order as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against them. For the avoidance of doubt, the releases set forth in Article X of the Plan expressly exclude Claims and Causes of Action asserted by or against Naveen Anand, Kenneth Krissinger, Jeffrey Passmore, and Charles Stauber, and nothing in the Plan or this Confirmation Order shall release, waive, discharge, or otherwise affect any Claims or Causes of Action against such individuals. Notwithstanding the reservation of such Causes of Action under the Plan, prior to the Effective Date, the Debtor may seek entry of an order of the Bankruptcy Court (a "Subsequent Settlement Order"), approving a settlement and release of one or more Causes of Action by filing a separate motion, after notice and opportunity for a hearing. In the event of the entry of a Subsequent Settlement Order, the terms of the releases provided in such order shall control over the releases and other reservations provided under the terms of the Plan and this Confirmation Order.

28. Reservation of Rights Regarding Texas Department of Insurance and Other Governmental Units. Nothing in this Confirmation Order, the Plan, any amendments thereto, or

related documents, discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit (as defined in the Plan and 11 U.S.C. § 101(27)) that is not a Claim (as defined in the Plan and 11 U.S.C. § 101(5)); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. For the avoidance of doubt, the State of Texas and its agencies, including but not limited to the Texas Department of Insurance, opts out of any and all releases provided in the Plan

29. Nonseverability. The provisions of this Confirmation Order (including the findings of fact and conclusions of law set forth herein) are nonseverable and mutually dependent.

30. Waiver or Estoppel. Each holder of a Claim or Equity Interest who has failed to timely object to the Plan or any of its provisions shall be deemed to have waived any objection and shall be forever estopped and enjoined from objecting to the Plan or any of the Plan's provisions.

31. Authorization to Consummate. The Debtor and the Reorganized Debtor are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions precedent to the Effective Date in accordance with Article IX of the Plan.

32. Injunctions and Automatic Stay. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or any order of the Court, and existing on the Confirmation Date shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

33. Retention of Jurisdiction. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain jurisdiction over the matters set forth in Article XI of the Plan.

34. Appeal of the Confirmation Order. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, modification, or vacatur. Notwithstanding any reversal, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and shall remain binding.

35. Conflicts Between Confirmation Order and Plan. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that in the event of any inconsistency among the Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern.

36. Applicable Nonbankruptcy Law. Pursuant to section 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and all amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

37. Final Order. Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h) and 7062, but subject to Article IX of the Plan, the Debtor and Reorganized Debtor are authorized to consummate the Plan upon entry of this Confirmation Order, and this Confirmation Order shall take effect immediately upon entry and shall not be stayed.

# # # END OF ORDER # # #

Submitted by:

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Emily F. Shanks (TX Bar No. 24110350)
**GRAY REED**
1845 Woodall Rodgers Fwy, Ste. 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Counsel to the Debtor*
*and Debtor in Possession*

# Exhibit A

## Modified Plan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HALLMARK FINANCIAL SERVICES, INC.,[1] | § | Case No. 26-80007 (MVL) |
| Debtor. | § | |

# FIRST MODIFIED CHAPTER 11 PLAN OF REORGANIZATION FOR HALLMARK FINANCIAL SERVICES, INC.

Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

Dated: August 21, 2026

[1] The last four digits of the Debtor's federal tax identification number are 7375. The Debtor's mailing address is 5400 Lyndon B Johnson Fwy, Ste 400, Dallas, Texas 75240.

**TABLE OF CONTENTS**

ARTICLE I DEFINITIONS AND INTERPRETATION AND CONSTRUCTION .... 1

A. Definitions. .... 1

B. Rules of Interpretation and Construction. .... 10

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS .... 10

A. Administrative Claims. .... 10

B. Professional Fee Claims. .... 11

C. U.S. Trustee Fees. .... 12

D. Priority Tax Claims. .... 12

E. Payment of Indenture Trustee Fees and Expenses. .... 12

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .... 12

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS .... 13

A. Class 1 – Other Secured Claims. .... 13

B. Class 2 – Priority Non-Tax Claims. .... 13

C. Class 3 – Senior Unsecured Notes Claims. .... 13

D. Class 4 – General Unsecured Claims .... 14

E. Class 5 – Junior Subordinated Debt Securities Claims .... 14

F. Class 6 – Intercompany Claims .... 15

G. Class 7 – Equity Interests .... 15

ARTICLE V IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES .... 15

A. Classes Entitled to Vote. .... 15

B. Class Acceptance Requirement. .... 15

C. Cramdown. .... 15

D. Elimination of Classes. .... 15

ARTICLE VI MEANS OF IMPLEMENTATION .... 15

A. General Settlement of Claims and Equity Interests. .... 15

B. Regulatory Approval Deadline and Bidding Procedures Toggle Plan Implementation .... 16

C. The Hildene Restructuring Transactions. .... 16

D. Sources of Consideration for Plan Distributions .... 18

E. Exemption from Registration Requirements. .... 18

F. Exemption from Certain Taxes and Fees. .... 19

G. Cancellation of Notes, Instruments, Certificates, Equity Interests, and Other Documents. .... 19

H. Corporate Existence. .... 20

I. Corporate Action. .... 20

J. New Organizational Documents .... 21

K. Vesting of Assets in the Reorganized Debtor. .... 21

L. Directors and Officers. .... 21
M. Retained Causes of Action. .... 21
N. Dissolution of Committee and Cessation of Fee and Expense Payments. .... 22
O. Hildene Professional Fees. .... 22
ARTICLE VII DISTRIBUTIONS .... 22
A. Timing and Calculation of Amounts to be Distributed. .... 22
B. Distribution Agent. .... 23
C. Rights and Powers of Distribution Agent. .... 23
D. Delivery of Distributions; Unclaimed Property. .... 23
E. Means of Payment. .... 25
F. Compliance Matters. .... 25
G. No Postpetition or Default Interest. .... 25
H. Allocation Between Principal and Accrued Interest. .... 25
I. Setoffs and Recoupment. .... 25
J. Claims Paid or Payable by Third Parties .... 26
ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS .... 26
A. Assumption of Executory Contracts and Unexpired Leases. .... 26
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. .... 27
C. Cure of Defaults and Objections to Cure and Assumption. .... 27
D. Objections to Claims. .... 28
E. Estimation of Claims. .... 28
F. No Distributions Pending Allowance. .... 28
G. Distributions After Allowance. .... 28
H. Disallowance of Late Filed Claims. .... 28
I. Insurance Policies. .... 28
J. Employee and Retiree Benefits. .... 29
K. Reservation of Rights. .... 29
L. Non-Occurrence of Effective Date. .... 29
M. Contracts and Leases Entered Into After the Petition Date. .... 30
ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN .... 30
A. Conditions to Confirmation of Plan. .... 30
B. Conditions to Effective Date of Plan. .... 30
C. Waiver of Conditions Precedent. .... 31
D. Effect of Failure of Conditions. .... 31
E. Reservation of Rights. .... 31
F. Substantial Consummation. .... 32

ARTICLE X EFFECT OF CONSUMMATION ..... 32
A. Discharge and Compromise and Settlement of Claims, Interests, and Controversies. ..... 32
B. Exculpation. ..... 33
C. Plan Releases by the Debtor and Hildene ..... 33
D. Third-Party Releases. ..... 34
E. Injunction and Stay. ..... 35
F. Gate Keeping ..... 35
ARTICLE XI RETENTION OF JURISDICTION ..... 36
ARTICLE XII MISCELLANEOUS ..... 37
A. Filing of Additional Documents. ..... 37
B. Schedules, Exhibits, and Plan Supplement Incorporated. ..... 37
C. Amendment or Modification of the Plan. ..... 37
D. Inconsistency. ..... 37
E. Expedited Tax Determination. ..... 37
F. Binding Effect. ..... 37
G. Severability. ..... 38
H. No Payment of Attorneys' Fees. ..... 38
I. Notices. ..... 38
J. Governing Law ..... 38

Hallmark Financial Services, Inc., the debtor and debtor in possession in this Chapter 11 Case, hereby proposes the following *First Modified Chapter 11 Plan of Reorganization* pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION AND CONSTRUCTION

***A. Definitions.***

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

1. ***2035 Junior Subordinated Debt Securities*** means those certain debt securities due June 15, 2035, issued pursuant to the 2035 Junior Subordinated Debt Securities Indenture in the principal amount of Thirty Million Nine Hundred Twenty Eight Thousand Dollars ($30,928,000.00) and bearing interest at a fixed rate of 7.725% per annum for the first ten years and thereafter at a variable rate equal to the three-month SOFR plus CSA plus 3.25%, with interest payable quarterly and subject to deferral at the Debtor's option for up to 20 consecutive quarters under certain conditions.

2. ***2035 Junior Subordinated Debt Securities Indenture*** means the indenture as may be modified, amended, or supplemented, from time to time, dated June 21, 2005, as between the Debtor and JPMorgan Chase Bank, National Association as indenture trustee.

3. ***2037 Junior Subordinated Debt Securities*** means those certain debt securities due September 15, 2037, issued pursuant to the 2037 Junior Subordinated Debt Securities Indenture in the principal amount of Twenty-Five Million Seven Hundred Seventy-Four Thousand Dollars ($25,774,000.00) and bearing interest at a fixed rate of 8.28% per annum for the first ten years and thereafter at a variable rate equal to the three-month SOFR plus CSA plus 2.90%, with interest payable quarterly and subject to deferral at the Debtor's option for up to 20 consecutive quarters under certain conditions.

4. ***2037 Junior Subordinated Debt Securities Indenture*** means the indenture as may be modified, amended, or supplemented, from time to time, dated August 23, 2007, as between the Debtor and The Bank of New York Trust Company, National Association as indenture trustee.

5. ***Administrative Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

6. ***Administrative Claim Bar Date*** means the deadline to file all Administrative Claims, as established pursuant to the Confirmation Order.

7. ***Allowed*** means any Claim (i) for which a proof of claim has been filed and as to which no objection has been made on or before the Objection Deadline or such other applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtor's Schedules and is not listed as contingent, unliquidated or disputed as to which no objection has been made, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under this Plan.

8. ***Alternative Restructuring Transaction*** means any transaction other than the Restructuring Transaction involving the Debtor's Insurance Subsidiaries and other non-cash Assets for cash in an amount in excess of the Initial Plan Value, in accordance with the RSA, and resulting from the Bidding Procedures approved pursuant to the Bidding Procedures Order.

9. ***Anand Claims*** (and each, an "***Anand Claim***") means any and all Proofs of Claim filed by Naveen Anand, including, but not limited to, Claims to account for all rights, entitlements, advancements, and indemnification (i) pursuant to the Debtor's or Reorganized Debtor's (as applicable) applicable organizational documents (including the applicable bylaws), and (ii) as provided in that certain Memorandum Opinion and Order, dated June 11, 2026,

entered by the United States District Court for the Northern District of Texas in Case No. 3:24-cv-03181-B, captioned *Anand v. Hallmark Financial Services, Inc.*

10. ***Anand Parties*** (and each, an "***Anand Party***") means (i) Naveen Anand, and (ii) any of Naveen Anand's heirs, descendants, current and former family members, successors, and assigns.

11. ***Assets*** means property of the Debtor's Estate and proceeds thereof.

12. ***Assumed Executory Contract and Unexpired Lease List*** means the list, as determined by the Debtor or the Reorganized Debtor, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtor, which list shall be included in the Plan Supplement.

13. ***Assumed Executory Contracts and Unexpired Leases*** means those Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtor, as set forth on the Assumed Executory Contract and Unexpired Lease List.

14. ***Auction*** means any auction or competitive bidding process conducted by the Debtor or its Professionals pursuant to the Bidding Procedures.

15. ***Avoidance Actions*** means any and all avoidance, recovery, subordination or other claims, causes of action, or remedies that have been or may be asserted by or on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553 of the Bankruptcy Code, or under similar or related local, state, federal, foreign law, or common law.

16. ***Ballot*** means the form of ballot provided to Holders of Class 3 and Class 5 Claims in accordance with the RSA or as may be otherwise approved or ratified by the Bankruptcy Court pursuant to the Solicitation Procedures Order and provided to Holders of Claims to indicate their votes to accept or reject the Plan and to make elections with respect to the Third-Party Releases provided under Article X.D hereof.

17. ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time.

18. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Case.

19. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

20. ***Backup Bidder*** has the meaning ascribed to it in the Bidding Procedures Order.

21. ***Bar Date*** means the last date to file proofs of claim against the Debtor under the terms of the Bar Date Order.

22. ***Bar Date Order*** means the order entered by the Bankruptcy Court fixing the deadlines for parties in interest to file proofs of Claims or Interests.

23. ***Bidding Procedures*** means the procedures approved by the Bankruptcy Court under the Bidding Procedures Order.

24. ***Bidding Procedures Order*** means the order entered by the Bankruptcy Court authorizing the Debtor to market its non-cash Assets, including its Insurance Subsidiaries, for an Alternative Restructuring Transaction with a minimum purchase price of no less than the Initial Plan Value, payable solely in cash.

25. ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

26. ***Cash*** means legal tender of the United States of America.

27. ***Causes of Action*** means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and its Estate, whether arising before, on, or after the Petition Date.

28. ***Chapter 11 Case*** means the above-captioned chapter 11 case of the Debtor.

29. ***Claim*** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

30. ***Claims Register*** means the official register of Claims against and Interests in the Debtor maintained by the Solicitation Agent.

31. ***Class*** means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

32. ***Collateral*** means any interest in property of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

33. ***Committee*** means the statutory committee appointed in the Chapter 11 Case by the Office of the United States Trustee, if any, as the same may be reconstituted from time to time.

34. ***Company Released Parties*** means: (i) the Debtor, (ii) the Debtor's predecessors, successors and assigns, Insurance Subsidiaries, affiliates, managed accounts or funds or investment vehicles, and (iii) each of such Person's respective current officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals of the Debtor, and (iv) the current officers and directors of the Debtor and its Insurance Subsidiaries, in each case in the foregoing (i) through (iii), in their capacity as such. Notwithstanding the foregoing, neither the Company Released Parties nor any releases set forth in **Article X.C** of the Plan or otherwise shall be construed to include the following individuals: Naveen Anand, Kenneth Krissinger, Jeffrey Passmore, and Charles Stauber.

35. ***Company Releasing Parties*** means: (i) the Debtor; (ii) the Insurance Subsidiaries; (iii) for each of the foregoing (i) and (ii), any predecessor, successor, assign, subsidiaries, affiliate, managed accounts or funds or investment vehicles; and (iv) for each of the foregoing (i)-(iii), any current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals of the Debtor, in each case in their capacity as such. Notwithstanding the foregoing, none of (i) the Anand Parties, nor (ii) the Krissinger Parties shall be deemed a "Company Releasing Party" and none of the releases set forth in the Plan or in the Confirmation Order shall be construed to include releases of any claims or causes of action against any Person or Entity, including, but not limited to, the Company Releasing Parties and the Company Released Parties, by any of the Anand Parties or the Krissinger Parties.

36. ***Confirmation Date*** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

37. ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

38. ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

39. ***Consenting Parties*** means all Persons who affirmatively consent to the Third-Party Releases by either: (1) submitting a Ballot to the Solicitation Agent without having checked the appropriate box to opt out of the Third-Party Releases; or (2) returning an Opt In Form to the Solicitation Agent having checked the appropriate box to opt into the Third-Party Releases. For the avoidance of doubt, none of (i) the Anand Parties, nor (ii) the Krissinger Parties shall be deemed a "Consenting Party" and none of (i) the Anand Parties, nor (ii) the Krissinger Parties shall be deemed to grant the Third-Party Releases.

40. ***Debtor*** or ***Company*** means Hallmark Financial Services, Inc. and may be used interchangeably throughout the Plan and Disclosure Statement.

41. ***Disallowed*** means any Claim, or portion thereof, that is not an Allowed Claim or a Disputed Claim.

42. ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

43. ***Disputed*** means, when used with respect to a Claim, such Claim, as the case may be (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtor or any party in interest has made a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

44. ***Distribution Agent*** means, with respect to the Restructuring Transactions, the Reorganized Debtor or, with respect to an Alternative Restructuring Transaction, the Person designated by the Debtor (after consulting with the Successful Bidder) pursuant to a Plan Supplement.

45. ***Distribution Date*** means the date, occurring on or as soon as practicable after the Effective Date, on which the Debtor or the Reorganized Debtor, as applicable, first makes distributions to Holders of Allowed Claims as provided in the Plan.

46. ***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date or such other date as established by an Order of the Bankruptcy Court.

47. ***Effective Date*** means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in Article IX.B hereof shall have been satisfied or waived as provided in Article IX.C hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction, or similar prohibition is no longer in effect.

48. ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

49. ***Equity Interest*** means any "equity security" of the Debtor, as that term is defined in section 101(16) of the Bankruptcy Code and including but not limited to options, warrants, stock appreciation rights, phantom stock, and similar instruments.

50. ***Estate*** means the bankruptcy estate of the Debtor as created under section 541 of the Bankruptcy Code.

51. ***Exculpated Parties*** means, in each case solely in their capacity as such, the Debtor and the members of the Committee, as applicable.

52. ***Executory Contract*** means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

53. ***Final Decree*** means the decree contemplated by Bankruptcy Rule 3022.

54. ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

55. ***General Unsecured Claim*** or ***GUC*** means any Claim against a Debtor that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Senior Unsecured Noteholder Claim, a Junior Subordinated Debt Securities Claim, a Professional Fee Claim, an Other Secured Claim, an Intercompany Claim, or an Equity Interest. GUCs expressly include Claims arising from the termination or rejection of any contracts or management agreements, including Executory Contracts or Unexpired Leases.

56. ***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

57. ***HHH*** means Hildene Hallmark Holdings, LLC, a limited liability company organized under the laws of Delaware, (a) established for the purpose of owning up to 100% of the New Common Equity of the Reorganized Debtor in the event of a Restructuring Transaction; (b) the non-voting membership interests of which are owned 100% by Holders of Allowed Junior Subordinated Debt Securities Claims managed by or affiliated with Hildene pursuant to Article IV.E.2 of this Plan; and (c) which entity shall be solely managed by Brett Jefferson, who will not hold any direct equity interest in HHH and is not receiving any consideration under the Plan.

58. ***Hildene*** means Hildene Capital Management, LLC, Hildene Collateral Management Company, LLC, certain of its affiliate(s), funds, and accounts managed and expressly listed and disclosed to the Debtor in writing to the Debtor before the Petition Date in compliance with the RSA and subsequently disclosed to the Court pursuant to a verified statement under Bankruptcy Rule 2019.

59. ***Hildene Advisors*** has the meaning ascribed in Article VI.O hereof.

60. ***Hildene Professional Fees*** has the meaning ascribed in Article VI.O hereof.

61. ***Hildene Released Parties*** means Hildene, its predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and each of such entities' respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in their respective capacities as such.

62. ***Hildene Releasing Parties*** means Hildene, on behalf of itself and its predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in each case in their capacity as such.

63. ***Holder*** means, with respect to any Claim or Interest, the Person holding the beneficial interest in or asserting the rights pursuant to such Claim or Interest.

64. ***Indenture Trustee*** means, individually or collectively, the Junior Subordinated Debt Securities Indenture Trustee and the Senior Unsecured Notes Indenture Trustee, as applicable.

65. ***Indenture Trustee Fee and Expense Cap*** means the maximum amount payable by the Reorganized Debtor to each Indenture Trustee as reimbursement for fees and expenses incurred by the Indenture Trustees, including fees and expenses payable to the Indenture Trustees pursuant to the Indentures, which in the aggregate shall not exceed $50,000 for each Indenture Trustee accrued from and after the Petition Date; *provided*, *however*, that this cap shall serve as an aggregate cap for any Indenture Trustee serving as the trustee for multiple indentures.

66. ***Initial Plan Value*** means (i) the amount of Senior Unsecured Notes Claims, including accrued interest, plus (ii) 10% of Junior Subordinated Debt Securities Claims, including accrued interest, plus (iii) the estimated amount of unpaid Professional Fee Claims and Hildene Professional Fees and other Administrative Claims as of the Effective Date, plus (iv) to the extent applicable, any obligations to repay debtor in possession financing approved by a Final Order of the Bankruptcy Court, plus (v) the amount of GUCs, less (vi) the estimated amount of the Debtor's Cash, cash equivalents, and investment balances (to the extent that such investments are marketable securities or other cash equivalents) as of the Effective Date.

67. ***Insider*** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

68. ***Insurance Regulatory Authority*** means any Governmental Unit, regulatory authority, administrative authority, agency, or department having jurisdiction over the Debtor or any of the Insurance Subsidiaries.

69. ***Insurance Subsidiary*** means any one of the Debtor's direct or indirect subsidiaries that operate insurance businesses or other businesses regulated by any Governmental Unit or are otherwise subject to regulatory oversight by the applicable Insurance Regulatory Authorities.

70. ***Intercompany Claim*** means a Claim held by a Subsidiary of the Debtor against the Debtor.

71. ***Junior Subordinated Debt Securities Claim*** means, collectively or individually, a Claim arising from any 2035 Junior Subordinated Debt Securities or 2037 Junior Subordinated Debt Securities, as applicable.

72. ***Junior Subordinated Debt Securities Indenture Trustee*** means Wilmington Savings Fund Society, FSB, as indenture trustee under the 2035 Junior Subordinated Debt Securities Indenture and the 2037 Junior Subordinated Debt Securities Indenture.

73. ***Krissinger Claims*** (and each, a "***Krissinger Claim***") means all Proofs of Claim filed by Kenneth Krissinger, including, but not limited to, Claims to account for all rights, entitlements, advancements, and indemnification pursuant to the Debtor's or the Reorganized Debtor's (as applicable) applicable organizational documents (including the applicable bylaws).

74. ***Krissinger Parties*** (and each, a "***Krissinger Party***") means (i) Kenneth Krissinger, and (ii) any of Kenneth Krissinger's heirs, descendants, current and former family members, successors, and assigns.

75. ***Local Rules*** means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

76. ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

77. ***MIP*** or ***Management Incentive Plan*** means the management incentive plan described more fully in Article VI.C.3 hereof, as adopted by the New Board on or as soon as practicable following the Effective Date, providing for the issuance of New Common Equity or similar awards to officers, employees, directors, managers, and other key service providers for the Reorganized Debtor from time to time and in accordance with the RSA and this Plan.

78. ***New Board*** means the board of directors, board of managers, or other governing body of the Reorganized Debtor.

79. ***New Common Equity*** means the common stock, limited liability company membership units, or functional equivalent thereof of Reorganized Debtor to be issued on the Effective Date.

80. ***New Convertible Preferred Equity*** means the preferred shares of stock, limited liability company membership units, or functional equivalent thereof of Reorganized Debtor to be issued on the Effective Date as described more fully in Article VI.C.4 hereof.

81. ***New Organizational Documents*** means the documents providing for corporate organization and governance of the Reorganized Debtor, including charters, bylaws, operating agreements or such other applicable organizational documents, which shall be in form and substance provided in the Plan Supplement.

82. ***New Senior Unsecured Notes*** means the new take-back senior unsecured notes to be issued by Reorganized Debtor on the Effective Date as described more fully in Article VI.C.5 hereof.

83. ***Objection Deadline*** means the later of (a) ninety (90) days after the Effective Date or (b) such later date as may be ordered by the Bankruptcy Court upon motion filed prior to the expiration of such ninety (90) day period.

84. ***Opt In Form*** means the form approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order and provided to parties in interest not entitled to submit Ballots but allowing such parties to indicate their election with respect to the Third-Party Releases provided under Article X.D hereof.

85. ***Other Retained Causes of Action*** means all Retained Causes of Action owned by the Debtor or its Estate on the Effective Date.

86. ***Petition Date*** means June 15, 2026.

87. ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

88. ***Plan*** means this Chapter 11 Plan, as the same may be amended, supplemented, or otherwise modified from time to time, including any exhibits and schedules hereto.

89. ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits, to be filed in one or more parts or volumes, no later than seven (7) days prior to the Confirmation Hearing, as amended, supplemented or otherwise modified from time to time, containing, without limitation: (a) the New Organizational Documents; (b) the forms of New Senior Unsecured Notes; (c) the identity of the members of the New Board and the officers of Reorganized Debtor; (d) the Rejected Executory Contract and Unexpired Lease List; (e) the Assumed Executory Contract and Unexpired Lease List; (f) the schedule of retained Causes of Action; and (g) any other necessary documentation related to the Restructuring Transactions or Alternative Restructuring

Transaction, as applicable, each of which shall be in form and substance consistent with the RSA and Bidding Procedures Order.

90. ***Policy Proceeds*** means the proceeds of the Debtor's insurance policies that constitute Assets of the Debtor or its Estate.

91. ***Proof of Claim*** means a proof of Claim Filed against the Debtor in the Chapter 11 Case by the applicable bar date.

92. ***Priority Non-Tax Claim*** means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4) or (5) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

93. ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in section 507(a)(8) of the Bankruptcy Code.

94. ***Pro Rata*** means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class.

95. ***Professional Fee Claim*** means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

96. ***Professional Fee Reserve*** means a segregated fund established by the Debtor before the Effective Date and held in a separate deposit account, controlled by the Debtor or one or more Professional Persons, in an estimated amount established prior to the Effective Date, and earmarked for the sole purpose of paying Allowed Professional Fee Claims. Any surplus of the Professional Fee Reserve, after payment of all Allowed Professional Fee Claims, shall be property of the Reorganized Debtor.

97. ***Professional Person*** means any Person retained in the Chapter 11 Case or to be compensated by the Debtor pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

98. ***Regulatory Approval*** means any approval required by any Regulatory Authority for the Restructuring Transaction or Alternative Restructuring Transaction, as applicable, including, without limitation, the approval by any applicable Regulatory Authority of any change-of-control applications, Form A applications, or equivalent processes.

99. ***Regulatory Approval Deadline*** means the deadline to obtain all necessary Regulatory Approvals required for the Effective Date to occur, which shall be ninety (90) days after the Petition Date (if the Successful Bidder is Hildene) or one-hundred and fifty (150) days after the Auction (if the Successful Bidder is not Hildene), by which date the Successful Bidder shall have obtained Regulatory Approvals, provided, however, that such deadline shall be subject to: (a) one 30-day extension if Regulatory Approval remains pending and there is no indication of denial as of the date of such extension, and (b) one additional 30-day extension if (x) Regulatory Approval remains pending and there is no indication of denial as of the date of such additional extension, and (y) the Debtor, in its reasonable discretion, agrees in writing to such additional extension.

100. ***Reinstatement*** of a Claim or Interest means the treatment set forth in section 1124(2) of the Bankruptcy Code.

101. ***Released Parties*** means collectively the following, in each case in its capacity as such with each being a "Released Party": (a) the Company Released Parties; (b) the Committee and its members (if appointed); and (c) the Hildene Released Parties.

102. ***Releasing Parties*** means collectively the following, in each case in its capacity as such with each being a "Releasing Party": (a) the Company Releasing Parties; (b) the Committee (if appointed); (c) Consenting Parties; and (d) the Hildene Releasing Parties.

103. ***Reorganized Debtor*** means Debtor Hallmark Financial Services, Inc., or any successor or assign thereto, on and after the Effective Date.

104. ***Restructuring Support and Forbearance Agreement*** or ***RSA*** means that certain Restructuring Support and Forbearance Agreement, dated as of April 3, 2026, by and among the Debtor and Hildene, including all exhibits and attachments thereto, and as may be amended, restated, and supplemented from time to time in accordance with its terms.

105. ***Restructuring Transaction*** means the transactions contemplated in the RSA and more fully detailed in Article VI.C of the Plan.

106. ***Retained Causes of Action*** means Causes of Action scheduled in the Plan Supplement as "retained" including (but not limited to) all of the Debtor's Causes of Action as more specifically enumerated in a Plan Supplement, including, but not limited to, Avoidance Actions, which, as of the Effective Date have not been sold, transferred, settled, waived, or released pursuant to the Plan, upon order of the Bankruptcy Court or otherwise, all of which shall be reserved, retained, assigned, and transferred to or vested in the Reorganized Debtor.

107. ***Schedules*** means, collectively, Schedules A through J and the Statement of Financial Affairs, as filed by the Debtor in the Chapter 11 Case, as the same may be amended from time to time.

108. ***SEC*** means the Securities and Exchange Commission.

109. ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

110. ***Security*** has the meaning set forth in section 2(a)(1) of the Securities Act.

111. ***Solicitation Agent*** means Stretto, Inc., the notice, claims, and solicitation agent that the Debtor retains for the Chapter 11 Case.

112. ***Secured Claim*** means a Claim secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the Holder of such Claim. To the extent a Claim exceeds the value of the Collateral securing such Claim, such deficiency shall constitute a General Unsecured Claim.

113. ***Senior Unsecured Noteholder*** means a Holder of a Senior Unsecured Notes Claim.

114. ***Senior Unsecured Notes*** means the unsecured notes issued by the Debtor on August 19, 2019, with interest accruing at a rate of 6.25% per annum and maturing on August 19, 2029, and subject to the terms and conditions of the Senior Unsecured Notes Indenture.

115. ***Senior Unsecured Notes Claim*** means a Claim arising from a Senior Unsecured Note.

116. ***Senior Unsecured Notes Indenture*** means the indenture as may be modified, amended, or supplemented, from time to time, dated August 19, 2019, as between the Debtor and The Bank of New York Mellon Trust Company, N.A., as indenture trustee.

117. ***Senior Unsecured Notes Indenture Trustee*** means the indenture trustee or its successor in interest under the Senior Unsecured Notes Indenture.

118. ***Solicitation Procedures Order*** means the Bankruptcy Court's *Order (I) Approving the Disclosure Statement, (II) Scheduling a Confirmation Hearing to Consider Confirmation of the Debtor's Plan, (III) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief*.

119. ***Subsidiary*** means an Entity owned, directly or indirectly, in whole or in part, by the Debtor.

120. ***Third-Party Releases*** means those releases provided under Article X.D hereof.

121. ***Unexpired Lease*** means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

122. ***Unimpaired*** means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

123. ***U.S. Trustee*** means the Office of the United States Trustee.

124. ***U.S. Trustee Fees*** means all fees payable under section 1930 of title 28 of the United States Code.

125. ***Voting Deadline*** means the deadline to submit votes to accept or reject the Plan.

***B. Rules of Interpretation and Construction.***

1. Interpretation.

Unless otherwise specified herein, all section, article, and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

2. Construction and Application of Bankruptcy Code Definitions.

Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

3. Other Terms.

The words “herein,” “hereof,” “hereto,” “hereunder,” and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.

4. Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Article III hereof.

***A. Administrative Claims.***

All Administrative Claims against the Debtor, other than Professional Fee Claims, shall be treated as follows:

1. Time for Filing.

All Holders of Administrative Claims shall file with the Bankruptcy Court a request for payment of such Claims on or before the Administrative Claim Bar Date. Any such request must be served on the Debtor, its counsel, the Committee, its counsel, and the Reorganized Debtor and its counsel, and must, at a minimum, set forth (i) the name of the Holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the legal and factual bases for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its Holder forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, or any other Person.

2. Objection and Allowance.

An Administrative Claim, other than a Professional Fee Claim, for which a request for payment has been properly and timely filed, if necessary, shall become an Allowed Administrative Claim unless an objection is filed by the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court upon motion. If an objection is timely filed, the Administrative Claim in question shall become an Allowed Administrative Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

3. Payment.

Except to the extent that a Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, agrees to a different treatment of such Claim, each Holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Claim, Cash in an amount equal to the amount of such Allowed Administrative Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) the date that entry of an order by the Bankruptcy Court allowing such Administrative Claim becomes a Final Order.

***B. Professional Fee Claims.***

1. Time for Filing.

Every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than the first Business Day that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

Between the entry of the Confirmation Order and the Effective Date, every Professional Person shall provide estimates to the Debtor and Hildene of their respective Professional Fee Claims prior to the Effective Date. The Debtor shall use its available Cash to establish a Professional Fee Reserve in the aggregate amount of all estimates received from the Professional Persons.

2. Objection and Allowance.

The last date to object to any Professional Fee Claim shall be the first Business Day that is twenty-four (24) days after such Professional Fee Claim has been filed with the Bankruptcy Court. All Professional Fee Claims shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor, the Reorganized Debtor (as applicable) and the Committee (as applicable).

3. Payment.

Each Professional Fee Claim shall be paid by the Reorganized Debtor from the Professional Fee Reserve or, if necessary, available Cash, upon entry of a Final Order approving such Professional Fee Claim.

***C. U.S. Trustee Fees.***

All U.S. Trustee Fees that arise before the Effective Date shall be paid from the Debtor's available Cash on or before the Effective Date or when such amounts are due in the ordinary course. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Reorganized Debtor. U.S. Trustee Fees will not be assessed against the initial transfer or transfers from the Debtor to the Reorganized Debtor. U.S. Trustee Fees will not be assessed upon any further disbursements of the Reorganized Debtor upon the initial assessment described above.

***D. Priority Tax Claims.***

1. Time for Filing

Holders of Priority Tax Claims shall file such Priority Tax Claims on or before the applicable Bar Date. Nothing in this Plan shall alter or extend such Bar Date.

2. Objection and Allowance.

A Priority Tax Claim shall become an Allowed Priority Tax Claim unless an objection is filed by the Objection Deadline. If an objection is timely filed, the Priority Tax Claim in question shall become an Allowed Priority Tax Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

3. Payment

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

4. Retention of Liens and Setoff

To the extent the Holder of an Allowed Priority Tax Claim has a Lien on a Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

***E. Payment of Indenture Trustee Fees and Expenses.***

On the later of (i) five business days after the Effective Date or (ii) five (5) Business Days following the receipt of an invoice containing specificity with respect to the amounts for which payment is sought, the Distribution Agent shall pay in full in Cash any fees and expenses of the Indenture Trustees, without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Case, and without any requirement for further notice or Bankruptcy Court review or approval, up to but not to exceed the Indenture Trustee Fee and Expense Cap. All fees and expenses of the Trustee incurred after the commencement of the Case and prior to the Effective Date shall be subject to the Indenture Trustee Fee and Expense Cap. The Indenture Trustees and their advisors shall provide to counsel to the Debtor invoices for unpaid fees and expenses before or as soon as practicable after the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtor are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No (deemed to accept) |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 2 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| ***3*** | ***Senior Unsecured Notes Claims*** | ***Impaired*** | ***Yes*** |
| 4 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| ***5*** | ***Junior Subordinated Debt Securities Claims*** | ***Impaired*** | ***Yes*** |
| 6 | Intercompany Claims | Impaired | No (deemed to reject) |
| 7 | Equity Interests | Impaired | No (deemed to reject) |

Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of this Plan.

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

***A. Class 1 – Other Secured Claims.***

On the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtor or Reorganized Debtor (with the consent of Hildene): (i) payment in full in Cash of the unpaid portion of such Claim (or, if not then due, payment in the ordinary course in accordance with the terms of the applicable agreement), (ii) Reinstatement of such Claim, or (iii) such other treatment as will render such Claim Unimpaired under the Plan.

***B. Class 2 – Priority Non-Tax Claims.***

On the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive Cash or other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

***C. Class 3 – Senior Unsecured Notes Claims.***

1. An Alternative Restructuring Transaction

In the event that the Bankruptcy Court approves an Alternative Restructuring Transaction pursuant to the Plan, on the Effective Date or as soon as reasonably practicable thereafter, the Debtor shall make pro rata distributions to the Allowed Senior Unsecured Noteholders of the net proceeds from such Alternative Restructuring Transaction (after full payment of Allowed Administrative Claims, Allowed Priority Tax Claims, and other Allowed Priority Non-Tax Claims), up to the aggregate amount of the Allowed Senior Unsecured Notes Claims, including any Indenture Trustee fees and expenses reimbursable under the Senior Unsecured Notes Indenture.

2. The Restructuring Transaction

In the event the Bankruptcy Court does not approve the Alternative Restructuring Transaction, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Senior Unsecured Notes Claim held by Hildene, such Allowed Senior Unsecured Noteholder shall receive, on account of such Claim, New Convertible Preferred Equity of the Reorganized Debtor having an initial liquidation preference equal to 100% of such Allowed Senior Unsecured Notes Claim. Each

other Allowed Senior Unsecured Noteholder shall receive, on account of such Claim, New Senior Unsecured Notes of the Reorganized Debtor in an original principal amount equal to 100% of such Holder's Allowed Senior Unsecured Notes Claim.

Senior Unsecured Notes Claims shall be deemed Allowed in the amount set forth in the Proof of Claim filed by the Senior Unsecured Notes Indenture Trustee on July 20, 2026, and maintained by the Solicitation Agent as Claim Number 17.

***D. Class 4 – General Unsecured Claims***

On the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim, shall receive payment in Cash of the unpaid portion of such Claim (without interest, premium or penalty) on or about the Effective Date. For General Unsecured Claims that are not Allowed as of the Effective Date, the Reorganized Debtor shall pay the amount of such Allowed General Unsecured Claim (i) as directed by any Final Order of the Bankruptcy Court allowing such Claim; (ii) as directed by a Final Order of another court of competent jurisdiction fixing the amount of such Claim; or (iii) pursuant to an agreement between the Holder of such General Unsecured Claim and the Reorganized Debtor.

***E. Class 5 – Junior Subordinated Debt Securities Claims***

1. An Alternative Restructuring Transaction

In the event that the Bankruptcy Court approves an Alternative Restructuring Transaction, on the Effective Date or as soon as reasonably practicable thereafter, the Debtor shall make Pro Rata distributions of the net proceeds from such Alternative Restructuring Transaction (after full payment of Allowed Administrative Claims, Allowed Priority Tax Claims or other Allowed Priority Non-Tax Claims, Allowed Senior Unsecured Notes Claims, and Allowed General Unsecured Claims), up to the aggregate amount of the Allowed Junior Subordinated Debt Securities Claims.

2. The Restructuring Transaction

In the event the Bankruptcy Court does not approve an Alternative Restructuring Transaction, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Junior Subordinated Debt Securities Claim, each Holder of an Allowed Junior Subordinated Debt Securities Claim shall receive, on account of such Claim, 10% of the amount of such Claim in Cash.

Notwithstanding the foregoing, Holders of Allowed Junior Subordinated Debt Securities Claims managed by or affiliated with Hildene agree to less favorable treatment such that, on the Effective Date, the Reorganized Debtor shall issue 100% of the New Common Equity to HHH, and the Holders of Allowed Junior Subordinated Debt Securities Claims who are managed by or affiliated with Hildene shall receive their Pro Rata share of the non-voting membership interests issued by HHH in lieu of any Cash distribution.

The New Common Equity of the Reorganized Debtor shall be subject to dilution by (i) the New Convertible Preferred Equity of the Reorganized Debtor or any securities issued in respect thereof and (ii) New Common Equity of the Reorganized Debtor issuable or reserved under the MIP and any other common equity issuances by the Reorganized Debtor to this Plan with Hildene's consent, or otherwise issued after the Effective Date.

The 2035 Junior Subordinated Debt Securities Claims and the 2037 Junior Subordinated Debt Securities Claims shall be deemed Allowed in the amounts set forth in the respective Proofs of Claim filed by the Junior Subordinated Debt Securities Indenture Trustee on July 30, 2026, and maintained by the Solicitation Agent as Claim Numbers 34 and 35, respectfully.

***F. Class 6 – Intercompany Claims***

On the Effective Date or as soon as reasonably practicable thereafter, all Intercompany Claims shall be discharged and Holders of Intercompany Claims shall receive nothing on account of such Intercompany Claims.

***G. Class 7 – Equity Interests***

On the Effective Date, all Equity Interests shall be cancelled, released, and extinguished and shall be of no further force or effect, and Holders of Equity Interests shall not receive or retain any property or distribution under the Plan on account of such Equity Interests.

## ARTICLE V
## IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

***A. Classes Entitled to Vote.***

The Holders of Claims in Classes 1, 2, and 4 are unimpaired and are conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

The Holders of Claims in Classes 3 and 5 are impaired and are entitled to vote to accept or reject the Plan.

The Holders of Claims and Equity Interests in Classes 6 and 7, respectively, are impaired and are conclusively deemed to reject the Plan and are therefore not entitled to vote to accept or reject the Plan.

***B. Class Acceptance Requirement.***

A Class of impaired Claims entitled to vote on the Plan shall have accepted the Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan.

***C. Cramdown.***

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

***D. Elimination of Classes.***

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed eliminated from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VI
## MEANS OF IMPLEMENTATION

***A. General Settlement of Claims and Equity Interests.***

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

### *B. Regulatory Approval Deadline and Bidding Procedures Toggle Plan Implementation*

The Successful Bidder shall obtain Regulatory Approval for the Restructuring Transactions or Alternative Restructuring Transaction contained in this Plan. If the Successful Bidder does not obtain Regulatory Approval by the applicable Regulatory Approval Deadline, the Debtor may file a notice with the Bankruptcy Court notifying parties that it will proceed to consummate the Restructuring Transactions or Alternative Restructuring Transaction, as applicable, with the Backup Bidder as the replacement Successful Bidder.

Pursuant to the Bidding Procedures, the Debtor shall designate a Successful Bidder prior to the Confirmation Date, which designation shall be subject to Court approval. Unless otherwise specified in this Plan, the provisions of Article VI.C hereof shall govern the implementation of the Plan where the Successful Bidder is Hildene. The Debtor shall not designate a Successful Bidder under an Alternative Restructuring Transaction if the cash portion of the bid does not exceed the Initial Plan Value.

### *C. The Hildene Restructuring Transactions.*

This Article VI.C of the Plan dictates the terms of the Restructuring Transactions between the Debtor and Hildene pursuant to the terms of the RSA. In the event that the Debtor pursues approval of an Alternative Restructuring Transaction under this Plan, the terms of this Article VI.C shall not apply and all distributions under the Plan shall be made from the Debtor's Cash or the Cash proceeds from the Alternative Restructuring Transaction.

1. DIP Financing

In the event that the Debtor has obtained financing from Hildene pursuant to a Final Order of the Bankruptcy Court under sections 363 or 364 of the Bankruptcy Code, in the event of consummation of a Restructuring Transaction, it is Hildene's intent to cause any and all obligations arising from such financing shall be discharged on the Effective Date in exchange for issuance of New Convertible Preferred Equity in the Reorganized Debtor to Hildene, which shall have the same terms as the New Convertible Preferred Shares issued on account of the portion of Allowed Senior Unsecured Notes Claims held by Hildene and its affiliates. In the event of consummation of an Alternative Restructuring Transaction, any DIP financing which may be provided by Hildene shall be paid in full in Cash on the Effective Date.

2. New Board

On the Effective Date, the New Board shall consist of one (1) director designated by the Debtor, whose initial designee shall be Chris Kenney, or any other designee that may be approved by Hildene in its reasonable discretion; three (3) directors selected by Hildene; and one (1) independent director selected by Hildene. Corporate governance and additional governance terms of the Reorganized Debtor shall be determined as set forth in the Plan Supplement.

3. Management Incentive Plan

On or as soon as practicable after the Effective Date, in the event of the Restructuring Transaction, the New Board shall adopt a Management Incentive Plan providing for the issuance of equity and/or equity-based awards ("MIP Awards") to officers, employees, directors, managers and other key service providers of the Reorganized Debtor from time to time. The MIP shall reserve for issuance MIP Awards in respect of such aggregate amount of New Common Equity of the Reorganized Debtor as may be determined by the New Board in its discretion (the "MIP Pool"), provided that the MIP Pool shall at all times comprise no less than five percent (5%) of the Reorganized Debtor's New Common Equity on a fully diluted basis (for the avoidance of doubt, including the dilution from the New Convertible Preferred Equity). The terms and conditions of the MIP (including, without limitation, the size of the MIP Pool, eligibility,

individual participation levels, timing and forms of awards, and vesting and performance criteria) shall be determined by the New Board in its discretion, in a manner consistent with the Plan, the RSA, and all other Plan Supplements.

4. New Convertible Preferred Equity

On the Effective Date, in the event of the Restructuring Transaction, the New Organizational Documents shall provide for the Reorganized Debtor to issue New Convertible Preferred Equity to the Holders of Senior Unsecured Noteholders managed by or affiliated with Hildene, or a Hildene affiliate entity designated by such Holders, with the following principal terms:

a. Issuer: The Reorganized Debtor.

b. Quantum: The aggregate amount of liquidation preference of New Convertible Preferred Equity to be issued on the Effective Date shall be determined based on the portion of Allowed Senior Unsecured Notes Claims held by Hildene and its affiliates.

c. Dividend Rate: 10% per annum, payable in kind by automatic accretion to the liquidation preference, compounded quarterly.

d. Priority: Senior to all common equity and junior to all debt securities (including the New Senior Unsecured Notes), except as otherwise provided in the Plan.

e. Maturity: Perpetual, subject to conversion, redemption, or other exit events as described below, payable on the sale of the Reorganized Debtor or all or substantially all of its assets.

f. Conversion Rights: Convertible at the option of the Holder at any time into common equity of the Reorganized Debtor at a valuation equal to the Initial Plan Value, plus (i) the amount of the Debtor's cash, cash equivalents and investments balance as of the Effective Date, reflected on a pro forma basis for amount of cash paid out to the Junior Subordinated Debt Claims pursuant to the Restructuring Transactions, less (ii) the estimated amount of unpaid professional fees and other administrative claims as of the Effective Date, less (iii) the amount of New Senior Unsecured Notes issued as part of the Restructuring Transactions, as more fully set forth in the Plan and related documentation, subject to customary anti-dilution adjustments for stock splits, combinations, reclassifications, and similar events.

g. Other Terms: Customary affirmative and negative covenants, representations and warranties, and indemnities for securities of this type, as set forth in the Plan and related documentation.

5. New Senior Unsecured Notes

On the Effective Date, in the event of the Restructuring Transaction, the Reorganized Debtor shall issue New Senior Unsecured Notes to Holders of Senior Unsecured Notes Claims other than Hildene and its affiliates with the following principal terms:

a. Issuer: The Reorganized Debtor.

b. Quantum: The aggregate principal amount of New Senior Unsecured Notes to be issued on the Effective Date shall be based on the portion of Allowed Senior Unsecured Notes Claims not held by Hildene. The maximum aggregate principal amount of New Senior Unsecured Notes issued shall

not exceed the aggregate principal amount of approximately $14,000,000, plus accrued and unpaid interest.

c. Interest Rate: Six and one-quarter percent (6.25%) per annum, payable semi-annually in arrears on February 15 and August 15 of each year.

d. Priority: Pari passu with all other unsecured obligations of the Reorganized Debtor.

e. Maturity: December 31, 2032.

f. Call Protection: The New Senior Unsecured Notes shall be redeemable in whole or in part, at the option of the Reorganized Debtor at a redemption price of par plus accrued and unpaid interest.

g. Other Terms: The New Senior Unsecured Notes shall contain affirmative covenants, negative covenants, and all other provisions substantially identical in all material respects to those set forth in the Senior Unsecured Notes Indenture, including but not limited to covenants relating to limitations on liens, incurrence of indebtedness, restricted payments, maintenance of the Insurance Subsidiaries, and reporting requirements.

***D. Sources of Consideration for Plan Distributions***

The Reorganized Debtor shall fund distributions under the Plan, as applicable, with: (1) the Reorganized Debtor's Cash; (2) the New Convertible Preferred Equity; (3) the New Common Equity; and (4) the New Senior Unsecured Notes. Each distribution and issuance referred to in this Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the New Convertible Preferred Equity and the New Common Equity, will be exempt from SEC registration, as described more fully in Article VI.E below.

Each distribution and issuance of the New Convertible Preferred Equity, New Common Equity, and New Senior Unsecured Notes under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution, issuance, and/or dilution, as applicable, and by the terms and conditions of the instruments evidencing or relating to such distribution, issuance, and/or dilution, as applicable, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution of the New Convertible Preferred Equity. Any Person's acceptance of New Convertible Preferred Equity or New Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Convertible Preferred Equity and New Common Equity will not be registered on any exchange as of the Effective Date.

***E. Exemption from Registration Requirements.***

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Convertible Preferred Equity and the New Common Equity issued pursuant to the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The shares of New Common Equity and New Convertible Preferred Equity to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such

an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in Section 2(a)(11) of the Securities Act and in section 1145 of the Bankruptcy Code.

### *F. Exemption from Certain Taxes and Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor, if applicable, the New Convertible Preferred Equity, and the New Common Equity; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### *G. Cancellation of Notes, Instruments, Certificates, Equity Interests, and Other Documents.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, guarantees, and other documents evidencing Claims or Equity Interests, including without limitation the 2035 Junior Subordinated Debt Securities Indenture, the 2037 Junior Subordinated Debt Securities Indenture, and the Senior Unsecured Notes Indenture shall be cancelled, and the obligations of the Debtor shall be discharged and deemed satisfied in full; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the Holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing Holders of Allowed Claims to receive distributions under the Plan, and preserving any rights, including rights of enforcement, against any person other than a Released Party; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtor or Reorganized Debtor, or any of its subsidiaries or affiliates, as applicable, except as expressly provided for in the Plan.

Notwithstanding such cancellation and discharge, all agreements, instruments, and other documents evidencing or issued pursuant to the 2035 Junior Subordinated Debt Securities Indenture, 2037 Junior Subordinated Debt Securities Indenture, and the Senior Unsecured Notes Indenture shall continue in effect to the extent necessary (i) to allow the Holders of Junior Subordinated Debt Securities Claims and the Senior Unsecured Notes Claims to receive Distributions of Cash and New Senior Unsecured Notes (as applicable), but no distributions of Cash, New Senior Unsecured Notes, New Convertible Preferred Equity, or New Common Equity shall be made by any of the Indenture Trustees; (ii) to allow the Indenture Trustees to: (a) if expressly requested by the Reorganized Debtor, receive and make Distributions or take such other action pursuant to the Plan on account of such Claims and (b) to otherwise exercise the Indenture Trustees' rights and discharge the Indenture Trustees' obligations relating to the interests of the Holders of such Claims; (iii) to preserve any rights of the Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any Distributions to the Holders of Junior Subordinated Debt Securities Claims or Senior Unsecured Notes Claims (as applicable), including any rights to priority of payment and/or to exercise charging liens pursuant to the 2035 Junior Subordinated Debt Securities Indenture, the 2037 Junior Subordinated Debt Securities Indenture, and the Senior Unsecured Notes Indenture(as applicable) and enforce its rights, claims, and interests, vis-à-vis any party other than the Debtor, all of which shall be subject to the Indenture Trustee Fee and Expense Cap; (iv) to allow each Indenture Trustee to enforce any obligations owed to it under the Plan to payment of fees and expenses up to each Indenture Trustee Fee and Expense Cap; (v) to allow each Indenture

Trustee to appear in the Chapter 11 Case or in any proceeding in the Bankruptcy Court or any other court; and (vi) to permit each Indenture Trustee to perform and seek compensation and reimbursement for any function necessary to effectuate the foregoing, subject to the Indenture Trustee Fee and Expense Cap; provided, that, nothing in this Article VI.G shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any liability or expense to the Debtor.

Upon completion of the final distributions in accordance with this Plan to Holders of Claims in Class 3 and Class 5, all instruments evidencing Senior Unsecured Notes and instruments evidencing Junior Subordinated Debt Securities Claims shall thereafter be deemed null, void, and worthless, and (ii) at the request of the Debtor under the applicable Indenture or the Reorganized Debtor, DTC shall take down the relevant position relating to such Securities. On the Effective Date, after giving effect to the distributions to be made to Classes 3 and 5 on the Effective Date, any and all Senior Unsecured Notes, Junior Subordinated Debt Securities, and Equity Interests shall be deemed cancelled, terminated and of no further force or effect, null, void, and worthless, shall no longer be transferable, and no Holder of such Claims or Equity Interests shall have any rights or Claims with respect to the Reorganized Debtor or any of its subsidiaries.

Notwithstanding any other term or provision of this Plan, or of the Confirmation Order to the contrary, including the limited continuation in effect of the instruments and documents issued in connection with Senior Unsecured Notes or the Junior Subordinated Debt Securities, after the Effective Date, (i) no transfer of any Claims in Classes 3 or 5 shall be deemed effective for any purpose, and (ii) no claims by any Indenture Trustee for payment of fees or expenses shall be enforceable in excess of the Indenture Trustee Fee and Expense Cap (except as set forth in the last paragraph of Article VII.D.1).

Except for the foregoing, subsequent to the performance by an Indenture Trustee of their obligations pursuant to the Plan or as may be necessary to effectuate the terms of this Plan, without any further action or approval of the Bankruptcy Court, each Indenture Trustee shall be automatically and fully relieved and discharged from all further duties and responsibilities related to the Plan and the respective indenture and related or ancillary documents.

### *H. Corporate Existence.*

Except as otherwise provided in the Plan or the Plan Supplement, the Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

### *I. Corporate Action.*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors, managers, and officers for the Reorganized Debtor; (3) implementation of the Restructuring Transactions or Alternative Restructuring Transaction, as applicable; and (4) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, as applicable, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Reorganized Debtor, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor, and any and all other agreements, documents, securities, and instruments relating to the foregoing. To the extent the appropriate officers of the Debtor or Reorganized Debtor are unwilling or unable to issue,

execute, or deliver such agreements, documents, and instruments contemplated here, the Confirmation Order shall deem such actions to be taken on behalf of the Debtor or Reorganized Debtor, as applicable. The authorizations and approvals contemplated by this Article VI.I shall be effective notwithstanding any requirements under non-bankruptcy law.

### *J. New Organizational Documents*

On or immediately before the Effective Date, the Debtor will file its New Organizational Documents with the applicable Governmental Unit, Secretary of State, and/or other applicable authorities in its state of incorporation or formation in accordance with the applicable laws of their respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective. The Debtor's or Reorganized Debtor's (as applicable) obligations to indemnify, defend, and reimburse existing and future members of the board existing immediately prior to the Effective Date and the New Board appointed on the Effective Date, as provided under the Debtor's Certificate of Incorporation as in effect immediately prior to the Effective Date, shall survive the Effective Date, and shall be incorporated into the New Organizational Documents directly or by operation of this Confirmation Order, and nothing in the Plan, the New Organizational Documents, or any other Plan Supplements implementing the terms of the Plan or Confirmation Order shall be construed as a basis for disallowing a Claim for indemnity, advancement, exculpation, defense costs, or reimbursement of expenses as described in any such Claim arising from the Debtor's organizational documents in existence prior to the Effective Date, including but not limited to, with respect to the Anand Claims and the Krissinger Claims. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities and will provide, as between the New Convertible Preferred Equity and the New Common Equity, such provisions with respect to payment of dividends and election of directors in the event of default of payment of such dividends. After the Effective Date, Reorganized Debtor may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

### *K. Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### *L. Directors and Officers.*

As of the Effective Date, the terms of the current members of the board of directors or managers of the Debtor shall expire, such directors or managers shall cease to hold office or have any authority from or after such time to the extent not expressly included in the roster of the New Board, and all of the directors or managers for the initial term of the New Board shall be appointed in accordance with the New Organizational Documents and each other constituent document of each Reorganized Debtor. To the extent known, the identities of the members of the New Board will be disclosed in the Plan Supplement or prior to the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code.

### *M. Retained Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all of the Debtor's rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and

exculpations contained in the Plan, including in Article X of the Plan, which shall be deemed released and waived by the Debtor and Reorganized Debtor as of the Effective Date.

The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against such Person. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Person.** Unless any Cause of Action against a particular Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Restructuring Transactions.

***N. Dissolution of Committee and Cessation of Fee and Expense Payments.***

Any Committee appointed during the Chapter 11 Case shall be dissolved on the Effective Date and the members of such Committee (solely in their capacities as such) and the Committee's Professional Persons (solely in their capacity as such) shall be released from all their duties relating to the Chapter 11 Case, except with respect to (a) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (b) any motions or other actions seeking enforcement or implementation of (i) the Plan or (ii) the Confirmation Order. Neither the Debtor nor the Reorganized Debtor, as applicable, shall be responsible for paying any fees or expenses incurred by the Committee after the Effective Date *except* if incurred in furtherance of the functions of the Committee set forth in (a) or (b) of this paragraph, subject to the rights of parties in interest to object thereto.

***O. Hildene Professional Fees.***

Pursuant to the terms of the RSA, the Debtor shall pay all reasonable, budgeted, and documented fees and expenses, including reasonable fees and expenses incurred prior to the Effective Date (the "Hildene Professional Fees") of Fox Rothschild, LLP, Wollmuth Maher & Deutsch LLP, Maynard Nexsen, P.C., Ryan Specialty Holdings, Inc., Ducera Partners, LLC, and any other professionals and/or consultants determined necessary by Hildene (collectively, the "Hildene Advisors"); *provided, however*, that the Debtor shall not be responsible for, and shall have no obligation to pay, any fees incurred by Hildene Advisors to investigate, prepare for, or pursue litigation or other claims against the Debtor, its officers, directors, employees, advisors, or consultants. Any accrued Hildene Professional Fees not billed or paid as of the Effective Date shall be paid on, or as soon as reasonably practicable following, the Effective Date.

## ARTICLE VII
## DISTRIBUTIONS

***A. Timing and Calculation of Amounts to be Distributed.***

For all purposes associated with calculating statutory U.S. Trustee fees based on distributions under the Plan, all guarantees by the Debtor of the obligations of any other Entity, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan. Any such Claims shall be released and discharged pursuant to Article X of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(e) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of the Debtor to pay U.S. Trustee fees until such time as a particular case is closed, dismissed, or converted.

***B. Distribution Agent.***

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

With respect to New Senior Unsecured Notes, on or after the Effective Date the Distribution Agent shall, through the Depository Trust Company, provide beneficial holders of Senior Unsecured Notes entitled to receive distributions of New Senior Unsecured Notes one or more notices of the issuance of New Senior Unsecured Notes in the amount of such holder's Senior Unsecured Notes Claim. Such notices shall also advise each holder of a Senior Unsecured Notes Claim that to be eligible to receive a New Senior Unsecured Note, a Noteholder shall be required to (i) deliver to the Reorganized Debtor at the appropriate address a completed Joinder in substantially the form annexed to the proposed Senior Notes Agreement in the Plan Supplement, and (ii) provide all documentation and other information reasonably requested by the Reorganized Debtor in its sole discretion or required by the IRC or similar regulations and regulatory authorities with respect to such holder under applicable "know your customer" and anti-money laundering rules and regulations, including, without limitation, the USA PATRIOT Act, all in form and substance reasonably satisfactory to the Reorganized Debtor. The Distribution Agent shall also make available copies of the applicable Senior Notes Agreement, the Plan and the Confirmation Order upon request.

***C. Rights and Powers of Distribution Agent.***

1. <u>Powers of the Distribution Agent</u>

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2. <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out of pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtor.

***D. Delivery of Distributions; Unclaimed Property.***

1. <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent: (a) to the signatory set forth on any Proof of Claim or Proof of Equity Interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Equity Interest is filed or if the Debtor has not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor or the Distribution Agent, as appropriate, after the date of any related Proof of Claim or Proof of Equity Interest; or (c) on any counsel that has appeared in the Chapter 11 Case on the Claim or Equity Interest Holder's behalf; *provided*, *however*, that distributions on account of Proofs of Claim filed by the Indenture Trustees, on behalf of the beneficial Holders of Allowed Senior Unsecured Notes Claims or Junior Subordinated Debt Securities Claims, shall not be made to the Indenture Trustees or its counsel and shall be made directly to such beneficial Holders or the nominees for such beneficial Holders (in which case the beneficial Holders shall receive their respective distributions from their respective nominees). Subject to this Article VII of the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in

the manner set forth in the Plan. The Debtor, the Reorganized Debtor, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. The Reorganized Debtor and the Debtor, as applicable, shall reimburse the Indenture Trustees for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of their counsel and agents) incurred on or after the Effective Date in connection with the implementation of the Plan, including making Distributions pursuant to, and in accordance with, the Plan, without the need for further approval or order of the Bankruptcy Court subject to the Indenture Trustee Fee and Expense Cap.

Notwithstanding the Indenture Trustee Fee and Expense Cap, on or immediately before the Effective Date, the Reorganize Debtor shall pay the Junior Subordinated Debt Securities Indenture Trustee the sum of $120,000.00, and the Senior Unsecured Notes Indenture Trustee the sum of $70,000.00 in full and final satisfaction of all fees and expenses incurred through the Effective Date. On the Effective Date, the Debtor, for its Estate, and the Hildene Releasing Parties shall each be deemed to release and discharge any and all claims and causes of action they have or may have against the Indenture Trustees and their professionals arising from their respective indentures or applicable law, and the Indenture Trustees shall be discharged from any and all further duties under their respective indentures.

2. Unclaimed Property

In the event that any distribution to any Claim or Equity Interest Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days from the later of (a) the Effective Date and (b) the Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged of and forever barred.

3. Time Bar to Payments

Checks issued under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Requests for reissuance of any check shall be made in writing directly to the Distribution Agent by the Person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 60-day period referenced in this section. After such 60-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with Article VII.D.2 of this Plan, and all Claims in respect of such void checks shall be discharged and forever barred.

4. No Fractional Distribution

No fractional shares of the New Common Equity or New Convertible Preferred Equity shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of the New Common Equity or New Convertible Preferred Equity that is not a whole number, the actual distribution of shares of the New Common Equity or New Convertible Preferred Equity, as applicable, shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of the New Common Equity and New Convertible Preferred Equity, as applicable, shall be adjusted as necessary to account for the foregoing rounding.

***E. Means of Payment.***

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

***F. Compliance Matters.***

The Distribution Agent shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Distribution Agent as a condition precedent to being sent a distribution under the Plan. If a Holder of a Claim does not provide the Distribution Agent with an executed Form W-9, Form W-8 or other requested tax form within ninety (90) days after the date of the initial request, the Distribution Agent may, in its sole discretion: (1) make such distribution under the Plan net of applicable withholding; (2) reserve such distribution under the Plan, in which case (i) such Holder shall be deemed to have forfeited the right to receive any current, reserved or future distribution under the Plan, (ii) any such distribution under the Plan shall revert to the Reorganized Debtor for all purposes, including but not limited to, for distribution to other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such distribution under the Plan shall be irrevocably waived and forever barred without further order of the Bankruptcy Court, all notwithstanding any federal, state or provincial escheat, unclaimed or abandoned property law to the contrary; or (3) establish any other mechanisms it believes are reasonable and appropriate.

***G. No Postpetition or Default Interest.***

Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to: (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

***H. Allocation Between Principal and Accrued Interest.***

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

***I. Setoffs and Recoupment.***

Unless otherwise provided in the Plan or the Confirmation Order, the Debtor and Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that the Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise; *provided further*, *however*, that, notwithstanding the foregoing: (i) each of the Anand Parties and the Krissinger Parties shall retain any rights of setoff or recoupment, if any, against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), without the requirement to file a motion with the Bankruptcy Court requesting the authority to perform any setoff or recoupment; and (ii) the Debtor or Reorganized Debtor, as applicable, shall retain any rights of setoff or recoupment, if any, against the Anand Parties or the Krissinger Parties, and (iii) with respect to (i) and (ii) above,

nothing in the Plan or any other documents or instruments implementing or entered into in connection with the Plan shall be deemed to create, expand, enhance, or otherwise modify such rights, and each of the Anand Parties, Krissinger Parties, the Debtor, and the Reorganized Debtor, as applicable, expressly reserves its respective rights to object to any such rights asserted by the Anand Parties, the Krissinger Parties, the Debtor, or the Reorganized Debtor, as applicable.

### *J. Claims Paid or Payable by Third Parties*

1. Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the applicable Distribution Date under the Plan.

2. Claims Payable by Third Parties

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtor or Reorganized Debtor, as applicable. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Solicitation Agent without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### *A. Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, and regardless of whether such Executory Contract or Unexpired Lease is identified on the Assumed Executory Contract and Unexpired Lease List, unless such Executory Contract and Unexpired Lease: (1) was assumed or rejected previously by the Debtor pursuant to a Final Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) is identified on the Rejected Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment, or rejections, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise

indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

### *B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Solicitation Agent and served on the Reorganized Debtor no later than thirty (30) days after the effective date of such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Solicitation Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Reorganized Debtor, the Estate, or its property, without the need for any objection by the Debtor or Reorganized Debtor, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article X.E of the Plan, notwithstanding anything in a Proof of Claim to the contrary, unless leave to File a late Claim is obtained.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article IV.D of the Plan and may be objected to in accordance with the provisions of this Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

### *C. Cure of Defaults and Objections to Cure and Assumption*

The Solicitation Procedures Order shall govern the procedures for resolving disputes over monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan. Any such monetary defaults shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed**

**shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

### *D. Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Reorganized Debtor, Distribution Agent, and any other party in interest with standing, shall be entitled to object to Claims. Any objections to Claims shall be served and filed by the Objection Deadline. Any Claim to which an objection is timely filed shall be a Disputed Claim.

### *E. Estimation of Claims.*

Prior to the Effective Date, the Debtor may seek to estimate for purposes of distribution the amount of any disputed, contingent or unliquidated Claims. The Debtor may seek, at any time prior to the Effective Date, an order providing for reserves for such contingent, unliquidated, and/or disputed Claims.

After the Effective Date, the Debtor or the Reorganized Debtor, as applicable, or the Distribution Agent may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(e) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any such Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register maintained in this Chapter 11 Case, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. If the Bankruptcy Court estimates any contingent, disputed and/or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### *F. No Distributions Pending Allowance.*

If a timely objection is made with respect to any Claim, no payment or distribution under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

### *G. Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that: (i) the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order; (ii) as directed by a Final Order of another court of competent jurisdiction fixing the amount of such Disputed Claim, in the event that the Disputed Claim is not adjudicated in the Bankruptcy Court; or (iii) pursuant to an agreement between the Holder of such General Unsecured Claim and the Debtor or the Reorganized Debtor, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest.

### *H. Disallowance of Late Filed Claims.*

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim for which a proof of claim is filed after the applicable Bar Date shall be deemed Disallowed. The Holder of a Claim that is Disallowed pursuant to this section shall not receive any distribution on account of such Claim, and neither the Debtor nor the Reorganized Debtor shall need to take any affirmative action for such Claim to be deemed Disallowed.

### *I. Insurance Policies.*

The Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall

be deemed to have assumed all insurance policies, as well as any agreements, documents, and instruments relating to such insurance policies or coverage of all insured claims. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court (including any provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtor (or after the Effective Date, the Reorganized Debtor) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

The automatic stay pursuant to section 362(a) of the Bankruptcy Code and the permanent injunction set forth in Article X.E, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (1) claimants with valid direct action claims under applicable non-bankruptcy law to proceed with their claims; (2) any insurer of the Debtor to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (a) all claims (i) where a claimant asserts a direct claim against any insurer of the Debtor under applicable law or (ii) that are subject to an order of the Bankruptcy Court granting the applicable claimant relief from the automatic stay or the injunction set forth in Article X.E to proceed with such claim and (b) all costs in relation to the foregoing; and (3) subject to the terms of the Debtor's agreement with any insurer of the Debtor and/or applicable non-bankruptcy law, any insurer of the Debtor to (i) cancel any policies under the Debtor's agreement with such insurer and (ii) take other actions relating thereto.

### *J. Employee and Retiree Benefits.*

Except as otherwise provided in the Plan, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the New Board under the Debtor's formation and constituent documents, the Reorganized Debtor shall: (1) amend, adopt, assume, and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtor who served in such capacity from and after the Petition Date; and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order; *provided* that the consummation of the transactions contemplated in the Plan shall not constitute a "change in control" with respect to any of the foregoing arrangements. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

### *K. Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

### *L. Non-Occurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

***M. Contracts and Leases Entered Into After the Petition Date.***

Contracts and leases entered into after the Petition Date by the Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor between the Petition Date and the Effective Date may be performed by the Reorganized Debtor in the ordinary course of business.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

***A. Conditions to Confirmation of Plan.***

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(i) An order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and ratifying the prepetition solicitation conducted pursuant to the RSA, in a form and substance reasonably satisfactory to Hildene, shall have been entered; and

(ii) The Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtor and Hildene, substantially consistent with the terms of the RSA.

***B. Conditions to Effective Date of Plan.***

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(i) the RSA shall not have been terminated and shall remain in full force and effect in accordance with its terms;

(ii) the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order has become a final order and shall not have been reversed, stayed, modified, or vacated on appeal, and any waivable unsatisfied conditions to effectiveness of the Plan have been satisfied or waived;

(iii) the aggregate principal amount of New Senior Unsecured Notes to be issued under the Plan shall not exceed approximately $14,000,000 plus accrued and unpaid interest;

(iv) the Successful Bidder and/or, in the event of an Alternative Restructuring Transaction, the Debtor shall have obtained necessary Regulatory Approvals with respect to all Insurance Subsidiaries, and all such Regulatory Approvals shall be in full force and effect and shall not be subject to any stay, injunction, or appeal with a reasonable likelihood of reversal or material modification;

(v) the final versions of all Plan Supplements and all of the schedules, documents, and exhibits related thereto shall be (i) consistent with the RSA and otherwise approved by the parties thereto consistent with their respective consent and approval rights set forth in the RSA and (ii) adopted on terms consistent with the RSA and this Plan;

(vi) the New Organizational Documents and New Senior Unsecured Notes and any other Plan Supplements described in the RSA shall have been [duly executed or deemed executed or filed in the appropriate government or regulatory agency or office] and delivered by all of the Persons that are parties thereto, all conditions precedent (other than any conditions that will be satisfied upon the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing in accordance with the terms thereof;

(vii) pursuant to the RSA and Article VI.O of this Plan, all billed Hildene Professional Fees have been paid in full, and any accrued but not yet billed amounts estimated by Hildene prior to the Effective Date have been reserved in a separate professional fee escrow account for payment in full after the Effective Date;

(viii) all Professional Fee Claims and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been placed in a Professional Fee Reserve pending approval by the Bankruptcy Court;

(ix) all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein; and

(x) there shall not be in effect any law or order by any Insurance Regulatory Authority restraining, enjoining, materially conditioning, or otherwise prohibiting the consummation of the Restructuring Transaction, the Alternative Restructuring Transaction, or the effectiveness of any Regulatory Approval.

Within two (2) Business Days of the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall file a notice of the occurrence of the Effective Date and serve the same on all creditors and parties in interest.

***C. Waiver of Conditions Precedent.***

Any of the foregoing conditions (with the exception of the conditions set forth in Articles IX.A and IX.B(iii)-(vi) hereof) may be waived by agreement of the Debtor, Hildene, and the Successful Bidder (if not Hildene) without notice to or order of the Bankruptcy Court. The failure to satisfy or waive any condition may be asserted by the Debtor, Hildene, or the Successful Bidder (if not Hildene) regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor, Hildene, or the Successful Bidder (if not Hildene) to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

***D. Effect of Failure of Conditions.***

If the foregoing conditions have not been satisfied or waived in the manner provided in Articles IX.A, IX.B, or IX.C hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtor and all Holders of Claims against and Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtor's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor; and (vi) this Plan shall be deemed withdrawn. Upon such occurrence, the Debtor shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the master service list maintained in the Chapter 11 Case.

***E. Reservation of Rights.***

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor, the Reorganized Debtor, or any other party with respect to any Claims or Equity Interests or any other matter.

***F. Substantial Consummation.***

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to the Debtor, shall be deemed to occur on the Effective Date. If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Equity Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by Debtor, any Holders of Claims or Equity Interests, or any other Entity in any respect.

## ARTICLE X
## EFFECT OF CONSUMMATION

***A. Discharge and Compromise and Settlement of Claims, Interests, and Controversies.***

1. Compromise Under 11 U.S.C. § 1123 and Bankruptcy Rule 9019

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Equity Interests in, the Debtor and its Estate and Causes of Action against other Entities.

2. Discharge Under 11 U.S.C. § 1141

Pursuant to section 1141(d) of the Bankruptcy Code, and except (i) with respect to a liquidation of the Debtor as the result of an Alternative Restructuring Transaction, or (ii) as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtor), Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan or voted to reject the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

***B. Exculpation.***

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Equity Interest, or any other party in interest, for any claim or cause of action arising on and after the Petition Date from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the occurrence of the Effective Date, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

***C. Plan Releases by the Debtor and Hildene.***

1. Plan Releases by the Debtor

**On the Effective Date, the Company Releasing Parties expressly and generally release, acquit, and discharge the Hildene Released Parties and the Company Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor or its Estate, any claims asserted or assertable on behalf of any Holder of any Claim against or Equity Interest in the Debtor or its Estate and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Company Releasing Parties (whether individually or collectively) ever had, now have, or may have, based on or relating to, or in any manner arising from, in whole or in part, Hildene or the Debtor (including the purchase, sale, rescission, or any other transaction relating to any security of or debt) or the negotiation, formulation, or preparation of the Restructuring Transactions, in each case, whether known or unknown, arising on or before the Effective Date. Notwithstanding the foregoing, nothing in such releases shall be construed as a release, acquittal or discharge of (i) any obligations owed under the Plan, (ii) any claims or causes of action against the Anand Parties, the Krissinger Parties, Jeffrey Passmore, and Charles Stauber, or (iii) any claims or causes of action by any of the Anand Parties or Krissinger Parties against any Person or Entity, including, but not limited to, the Releasing Parties or the Released Parties.**

2. Plan Releases by Hildene

**On the Effective Date, the Hildene Releasing Parties expressly and generally releases, acquits, and discharges the Company Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor or its Estate, any claims asserted or assertable on behalf of any Holder of any Claim against or Equity Interest in the Debtor or its Estate and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Hildene Releasing Parties (whether individually or collectively) ever had, now has, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the purchase, sale, rescission, or any other transaction relating to any security of or debt in the Debtor, or any other transaction) or the negotiation, formulation, or preparation of the Restructuring Transactions, in each case, whether known or unknown, arising on or before the Effective Date; provided, however, that nothing contained in this Plan or in any other document filed in the Chapter 11 Case shall constitute a release or waiver by the Hildene Releasing Parties of (x) any of the obligations of any of the Company Released Parties or of any other Person to consummate the transactions to be executed pursuant to this Plan, (y) the obligation to fully and timely perform all of the actions to be performed by any of them under or pursuant to this Plan, or under or pursuant to any document, instrument, or agreement executed to implement the Plan, or (z) the rights of Holders of Allowed Claims and Equity Interests to receive distributions under the Plan.**

***D. Third-Party Releases.***

**On the Effective Date, to the extent permitted by law, all Consenting Parties shall be deemed to release, acquit, and discharge the Hildene Released Parties and the Company Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever (except any Claim against or Equity Interest in the Debtor that is dealt with under this Plan), including any derivative claims asserted or assertable on behalf of the Debtor or its Estate, any claims asserted or assertable on behalf of any Holder of any Claim against or Equity Interest in the Debtor and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Consenting Parties (whether individually or collectively) ever had, now have, or may have, based on or relating to, or in any manner arising from, in whole or in part, Hildene or the Debtor (including the purchase, sale, rescission, or any other transaction relating to any security of or debt) or the negotiation, formulation, or preparation of the Restructuring Transactions, in each case, whether known or unknown, arising on or before the Effective Date. Notwithstanding the foregoing, nothing in such releases shall be construed as a release of any obligations owed under the Plan.**

**In exchange for such Third-Party Releases, the Hildene Released Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Consenting Party to the fullest extent permissible under applicable law, from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions, suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with, the Debtor (or any predecessor entity) or the Chapter 11 Case or affecting property of the Debtor's Estate, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything contained herein to the contrary, the foregoing releases do not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, or (ii) the rights of Holders of Allowed Claims and Equity Interests to receive distributions under the Plan.**

**Each of the Consenting Parties and Hildene Released Party knowingly grants this Third-Party Release notwithstanding that each Consenting Party and Hildene Released Party may hereafter discover facts in addition to, or different from, those which either such Consenting Party or Hildene Released Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and each Consenting Party or Hildene Released Party expressly waives any and all rights that such Consenting Party or Hildene Released Party may have under any statute or common law principle which would limit the effect of the Third-Party Release to those claims actually known or suspected to exist as of the Effective Date.**

**In connection with their agreement to the foregoing Third-Party Release, the Consenting Parties knowingly and voluntarily waive and relinquish any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

*E. Injunction and Stay.*

**Upon the Effective Date, and subject to and conditioned upon the Reorganized Debtor's full and timely performance of its obligations under this Plan, or except as otherwise expressly provided in this Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtor, its Estate, or the Reorganized Debtor (as applicable), (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Debtor, its Estate, or the Reorganized Debtor (as applicable) with respect to any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, its Estate, the Reorganized Debtor, or any property or interests in property of any of the foregoing, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, its Estate, the Reorganized Debtor, or any property or interests in property of any of the foregoing, with respect to any such Claim or Equity Interest, or (v) with respect to any Releasing Party, pursuing any claim released or exculpated under the Plan.**

**Each Holder of a Claim or Equity Interest shall be bound by the injunction provisions set forth in this section. The Reorganized Debtor, the Released Parties, or the Exculpated Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or this Plan, including the Exculpation, Injunction and Stay, and Gate Keeping provisions set forth in this Plan.**

**Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect at least until the Effective Date. Notwithstanding the foregoing, after the Effective Date, (i) Naveen Anand shall be permitted to prosecute his Anand Claims against the Debtor or the Reorganized Debtor, as applicable, and defend against claims asserted against him by such party in *Anand v. Hallmark Financial Services, Inc.*, Case No. 24-cv-03181-B (N.D. Tex.) and any related appeals or proceedings, and (ii) Kenneth Krissinger shall be permitted to prosecute his Krissinger Claims against the Debtor or the Reorganized Debtor, as applicable, and defend against claims asserted against him by such party in *Hallmark Financial Services, Inc. v. Krissinger*, Case No. 26-cv-00040-B (N.D. Tex.) and in any related appeals or proceedings.**

*F. Gate Keeping.*

**Except as otherwise provided herein, no Person or Entity may commence or pursue a claim or cause of action of any kind against any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or cause of action subject to Article X.B, X.C, X.D, and X.E hereof, including any claim or cause of action that was asserted or assertable on behalf of the Debtor, including any derivative, alter ego, successor liability, or similar claims and Causes of Action based on general harm to the Debtor, Holders of Claims and Equity Interests, or any other party in interest, or a theory of lack of separation between the Debtor and an Exculpated Party, without the Bankruptcy Court first determining, upon motion that attaches a copy of the proposed complaint or petition, and after notice and a hearing, that such claim or cause of action represents a direct (as opposed to derivative) and claim of any kind which has not been discharged, released, or otherwise exculpated under this Plan. At the hearing on such motion, the Bankruptcy Court shall have sole and exclusive jurisdiction to assess whether the proposed complaint or petition satisfies the applicable standard in this Plan. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims, including any Anand Claims or Krissinger Claims, to the maximum extent provided by applicable law. Notwithstanding the foregoing, (i) Naveen Anand shall not be required to seek approval from the Bankruptcy Court under this provision to prosecute his claims against the Debtor or the Reorganized Debtor, as applicable, or defend against claims asserted against him by such party in *Anand v. Hallmark Financial Services, Inc.*, Case No. 24-cv-03181-B (N.D. Tex.) and any related appeals or proceedings; and (ii) Kenneth Krissinger shall not be required to seek approval from the Bankruptcy Court under this provision to prosecute his claims against the**

**Debtor or the Reorganized Debtor, as applicable, or defend against claims asserted against him by such party in *Hallmark Financial Services, Inc. v. Krissinger*, Case No. 26-cv-00040-B (N.D. Tex.) and any related appeals or proceedings.**

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtor's Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i) To hear and determine pending applications for the assumption, assignment, or rejection of Executory Contracts or Unexpired Leases and the allowance of Claims resulting therefrom;

(ii) To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor that may be pending on the Effective Date or that are retained and preserved herein;

(iii) To ensure that distributions to Holders of Allowed Claims and Equity Interests are effected as provided in the Plan;

(iv) To hear and determine any timely objections to Administrative Claims or to proofs of Claim, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(v) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(vi) To take any action and issue such orders, after the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan or any prior order of the Bankruptcy Court, or to maintain the integrity of the Plan or any prior order entered by the Bankruptcy Court during the Chapter 11 Case;

(vii) To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(viii) To hear and determine all requests for payment of Professional Fee Claims;

(ix) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the New Organizational Documents, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(x) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(xi) To hear any other matter not inconsistent with the Bankruptcy Code;

(xii) To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder, including the matters set forth in Article X.B, X.C, X.D, X.E and X.F hereof;

(xiii) To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan;

(xiv) To hear and determine all requests to extend the Objection Deadline or any other deadlines established by the Plan; and

(xv) To enter a Final Decree(s) closing the Chapter 11 Case.

The Bankruptcy Court's jurisdiction to adjudicate, decide, or resolve any and all matters related to the Retained Causes of Action shall be non-exclusive.

## ARTICLE XII
## MISCELLANEOUS

***A. Filing of Additional Documents.***

The Debtor or the Reorganized Debtor may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

***B. Schedules, Exhibits, and Plan Supplement Incorporated.***

All exhibits and schedules to the Plan, if any, and the documents contained in the Plan Supplement, if any, are incorporated into and are a part of the Plan as if fully set forth herein.

***C. Amendment or Modification of the Plan.***

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to or after the entry of the Confirmation Order. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any Holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

***D. Inconsistency.***

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement or the Plan, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

***E. Expedited Tax Determination.***

The Debtor or Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

***F. Binding Effect.***

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

***G. Severability.***

If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtor may modify this Plan in accordance with Article XII.C hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of this Plan; or (ii) require the resolicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

***H. No Payment of Attorneys' Fees.***

Except for Professional Fee Claims, Hildene Professional Fees, and Indenture Trustees' reasonable professional fees and expenses (subject to the Indenture Trustee Fee and Expense Cap) described more fully in this Plan, no attorneys' fees or other professional fees shall be paid by the Debtor with respect to any Claim or Equity Interest, unless (i) otherwise specified in a Final Order of the Bankruptcy Court; (ii) as directed by Final Order of another court of competent jurisdiction; or (iii) pursuant to an agreement between the Holder of such Claim and the Debtor or the Reorganized Debtor, as applicable.

***I. Notices.***

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Hallmark Financial Services, Inc.
5400 Lyndon B. Johnson Freeway
Suite 400
Dallas, Texas 75240-2345
Attention: CEO

*With a copy to:*

**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Attention: Jason S. Brookner and Aaron M. Kaufman
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com and akaufman@grayreed.com

*After the Effective Date, to:*

Hallmark Financial Services, Inc.
c/o Hildene Capital Management, LLC
333 Ludlow Street
Stamford, CT 06902
Attention: Seth Kurland

***J. Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit),

the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

Dated: August 21, 2026
Dallas, Texas

**Hallmark Financial Services, Inc.**

By: */s/ Chris Kenney*
Chris Kenney, Chief Executive Officer

Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Counsel to the Debtor and Debtor in Possession*